Exhibit 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ITHACA VENTURES k.s. and ITHACA DEVELOPMENT, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 13-824-GMS |
| v. | ) ) ) | **JURY TRIAL DEMANDED** |
| NINTENDO OF AMERICA INC. and NINTENDO CO., LTD., | ) ) ) | |
| Defendants. | ) ) | |

## NINTENDO OF AMERICA INC.'S AND NINTENDO CO., LTD.'S
## MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11

Defendants Nintendo of America Inc. and Nintendo Co., Ltd. (collectively "Nintendo") respectfully move this Court for an Order sanctioning Plaintiffs and their attorneys, pursuant to Fed. R. Civ. P. 11.  Nintendo submits that Plaintiffs' patent infringement allegations are baseless. Plaintiffs and their counsel failed to conduct a proper pre-suit investigation as required by Fed. R. Civ. P. 11, therefore, sanctions, including but not limited to dismissal of Plaintiffs' action and Nintendo's costs and fees in bringing this motion are appropriate.

The grounds for this Motion are fully set forth in the accompanying Memorandum in Support, filed contemporaneously herewith.  As noted by the date of this and related documents, all Rule 11 motion papers were originally served on Plaintiffs' counsel on August 29, 2013.

OF COUNSEL:

Jerry A. Riedinger
Tyler C. Peterson
Kirstin E. Larson
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Tel:  (206) 359-8000

C. Mark Kittredge
PERKINS COIE LLP
2901 N. Central Avenue, Suite 2000
Phoenix, AZ   85012-2788
Tel:  (602) 351-8000

Original Service Date: August 29, 2013
Filed & Served Date:

1120849/ 40335

POTTER ANDERSON & CORROON LLP

By:    /s/ Richard L. Horwitz
       Richard L. Horwitz (#2246)
       David E. Moore (#3983)
       Bindu A. Palapura (#5370)
       Hercules Plaza, 6th Floor
       1313 N. Market Street
       Wilmington, DE  19801
       Tel:  (302) 984-6000
       rhorwitz@potteranderson.com
       dmoore@potteranderson.com
       bpalapura@potteranderson.com

*Attorneys for Defendants Nintendo of America
Inc. and Nintendo Co., Ltd.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ITHACA VENTURES k.s. and ITHACA DEVELOPMENT, LLC, )<br>)<br>) | |
| Plaintiffs,        ) | C.A. No. 13-824-GMS |
| )                   | |
| v.            ) | **JURY TRIAL DEMANDED** |
| )                   | |
| NINTENDO OF AMERICA INC. and NINTENDO CO., LTD.,           )<br>)<br>) | |
| Defendants.        ) | |

## [PROPOSED] ORDER

Before the Court is Defendants' Nintendo of America Inc. and Nintendo Co., Ltd.'s

Motion for Sanctions Pursuant to Fed. R. Civ. P. 11.  The Court determines that the Motion

should be and is hereby GRANTED.  The case is hereby dismissed.

Plaintiffs are hereby ordered to:

1. Pay Nintendo its costs and fees associated with bringing the Motion;

2. [Other sanctions as the Court deems appropriate.]


It is therefore ORDERED that Nintendo's Motion is GRANTED.

DATED this ___ day of _____, 2013.


_____
The Honorable Gregory M. Sleet
Chief Judge

Original Service Date: August 29, 2013
Filed & Served Date:


1120855/ 40335

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ITHACA VENTURES k.s. and ITHACA DEVELOPMENT, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 13-824-GMS |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| NINTENDO OF AMERICA INC. and NINTENDO CO., LTD., | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM IN SUPPORT OF NINTENDO'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11

OF COUNSEL:

Jerry A. Riedinger
Tyler C. Peterson
Kirstin E. Larson
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Tel:  (206) 359-8000

C. Mark Kittredge
PERKINS COIE LLP
2901 N. Central Avenue, Suite 2000
Phoenix, AZ  85012-2788
Tel:  (602) 351-8000

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Defendants Nintendo of America Inc. and Nintendo Co., Ltd.*

Original Service Date:  August 29, 2013
Filed & Served Date:

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... iii

NOTES ON CITATIONS ......................................................................................................iv

I. INTRODUCTION.................................................................................................................1

II. STATEMENT OF NATURE AND STATE OF THE PROCEEDINGS ...................................1

III. SUMMARY OF THE ARGUMENT .....................................................................................2

    A. Infringement Allegations Must Be Objectively Reasonable and Based on a Pre-
       Suit Analysis of the Claims of the Patent and the Accused Product .....................2

    B. Plaintiffs Cannot Meet Their Burden of Demonstrating a Reasonable Pre-Suit
       Investigation .........................................................................................................3

IV. STATEMENT OF FACTS .....................................................................................................3

    A. The Asserted '802 Patent....................................................................................3

        1. The meaning of the "tilt" limitation ..................................................6

        a. The meaning of "tilt" as demonstrated by the specification............................6

        b. The meaning of "tilt" as demonstrated by the prosecution history ...................8

        2. The meaning of the "move parallel" limitation ...............................10

    B. Nintendo's Accused Wii Balance Board ................................................11

    C. Pre-Suit Licensing Discussions and Nintendo's Efforts to Resolve This Dispute ......15

V. ARGUMENT.........................................................................................................................16

    A. Ithaca and Its Counsel Failed to Conduct a Proper Pre-Suit Investigation.................16

        1. The Wii Balance Board Does Not Meet the "Tilt" Limitation........................16

        2. The Wii Balance Board Does Not Meet the "Parallel Movement"
        Limitation .............................................................................................17

    B. Ithaca and Its Attorneys Should Both Be Sanctioned for Their Failure to
       Conduct a Reasonable Pre-Suit Investigation ...................................................18

VI. CONCLUSION ....................................................................................................................19

# TABLE OF AUTHORITIES

**CASES**

*Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account,*
  618 F.3d 277 (3d Cir. 2010) ........................................................................................2

*Digeo, Inc. v. Audible, Inc.,*
  505 F.3d 1362 (Fed. Cir. 2007) ...................................................................................3

*Eon-Net LP v. Flagstar Bancorp,*
  653 F.3d 1314 (Fed. Cir. 2011) ..............................................................................3, 17

*Johnson & Johnston Assoc. Inc. v. R.E. Serv. Co., Inc.,*
  285 F.3d 1046 (Fed. Cir. 2002) ...................................................................................6

*Judin v. United States,*
  110 F.3d 780 (Fed. Cir. 1997) .................................................................................2, 18

*Raylon, LLC v. Complus Data Innovations, Inc.,*
  700 F.3d 1361 (Fed. Cir. 2012) ..............................................................................2, 17

*Unique Concepts, Inc. v. Brown,*
  939 F.2d. 1558 (Fed. Cir. 1991) ........................................................................5, 6, 8, 10

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.,*
  208 F.3d 981 (Fed. Cir. 2000) .................................................................................2, 19

**RULES**

Fed. R. Civ. P. 11.......................................................................................................passim

## NOTES ON CITATIONS

Nintendo of America Inc. and Nintendo Co., Ltd. are collectively referred to as "Nintendo" or "Defendants." The patent-in-suit, U.S. Patent No. 6,624,802 (the "'802 Patent" or "the asserted patent"), entitled "Method And Device For Detecting Specific States Of Movement Of A User," is attached as Exhibit 1 to the Declaration of Richard L. Horwitz (the "Horwitz Decl."). References to the '802 patent are indicated by column and line number. A reference to "3:15" means column 3, line 15.

Additional exhibits attached to the Horwitz Decl. are as follows:

| *Exhibit* | *Description* |
|---|---|
| 2 | Service copy of Nintendo's Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 and Memorandum in Support Thereof |
| 3 | July 12, 2013 letter from J. Riedinger to R. Sunshine |
| 4 | August 6, 2013 letter from J. Riedinger to T. Ward |
| 5 | Chief Judge Randall R. Rader, Colleen V. Chien, and David Hricik, Op-Ed, Make Patent Trolls Pay in Court, N.Y. Times, June 4, 2013 |
| 6 | August 1, 2013 letter from T. Ward to J. Riedinger |
| 7 | Random House Webster's Unabridged Dictionary (2d ed. 1998): definition of "tilt |
| 8 | The American Heritage College Dictionary (3d ed. 2000): definition of "tilt" |
| 9 | U.S. Patent No. 5,613,690 to McShane |
| 10 | Certified Translation of Declaration of Hitoshi Yamazaki in Support of Nintendo's Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 |
| 11 | Response Under 37 C.F.R. 1.116 dated May 21, 2001 |
| 12 | Appeal Brief filed during prosecution of the '802 patent |
| 13 | U.S. Patent No. 5,283,555 to Ward |
| 14 | Amendment Under C.F.R. 1.111 dated January 16, 2001 |
| 15 | U.S. Patent No. 5,860,861 to Lipps et al. |

| 16 | Appeal Reply Brief filed during prosecution of the '802 patent dated January 3, 2002 |
|----|--------------------------------------------------------------------------------------|
| 17 | Nanotechnology SNF website pages located at http://snf.stanford.edu/Education/Nanotechnology.SNF.web.pdf |
| 18 | Franklin Mint Silver website pages located at http://www.franklin-mint-silver.com/franklin-mint--silver-gold-and-silver-weights.htm |

# I.     INTRODUCTION

Plaintiffs' patent claims a videogame device on which the user stands, to simulate sports like surfing and snowboarding, and that actually moves to enhance the virtual reality experience. The simplest pre-suit review of the '802 patent demonstrates that the claims require a standing plate, or support surface, on which the player stands that is "tiltable" and can also "either rotate about an axis or move in a direction which is parallel to said axis." The accused product (the Wii Balance Board), however, does not "tilt," does not "rotate about an axis" and does not "move . . . parallel to said axis." Nonetheless, Plaintiffs have distorted the plain meaning of the claims and pursued their lawsuit based on the frivolous argument that microscopic bending of metal bars (called load cells) at the four corners of the Wii Balance Board constitutes "tilt" and "parallel movement." The bending at issue is literally no more than the thickness of a dollar bill or a human hair. Plaintiffs' claim construction and their analysis of the accused Wii Balance Board is unsupported and does not meet the "reasonable" pre-suit investigation requirements of Fed. R. Civ. P. 11. Accordingly, Plaintiffs should be sanctioned for bringing and maintaining a suit based on such an untenable position.

# II.    STATEMENT OF NATURE AND STATE OF THE PROCEEDINGS

Plaintiffs filed this suit for patent infringement on May 9, 2013. Nintendo's Answer was filed on August 29, 2013. This case has not yet been set for an initial status conference. Pursuant to the safe harbor provisions of Fed. R. Civ. P. 11(c), this motion was served on Plaintiffs on August 29, 2013. (Exh. 2 to the Horwitz Decl.[1]) Twenty-one days have passed and Plaintiffs have failed to withdraw the challenged Complaint. In addition, a detailed letter was served on Plaintiffs on July 12th presenting the issues raised in this Motion. (Exh. 3) An

---

[1]   Hereafter, all cites to "Exh. __" will reference exhibits to the Horwitz Declaration.

additional letter was sent on August 6th.  (Exh. 4)  Plaintiffs have been given numerous advance

warnings of the frivolity of this suit.

### III.   SUMMARY OF THE ARGUMENT

Rule 11 plays an increasingly important role in ensuring that the court system is not

misused in an attempt to improperly coerce settlements .  *View Eng'g, Inc. v. Robotic Vision Sys.,*

*Inc.,* 208 F.3d 981, 986 (Fed. Cir. 2000) ("Defending against baseless claims of infringement

subjects the alleged infringer to undue costs – precisely the scenario Rule 11 contemplates."); *see*

*also* Chief Judge Randall R. Rader et al., Op-Ed, *Make Patent Trolls Pay in Court*, N.Y. Times,

June 4, 2013 ("Section 285 of the Patent Act, as well as Rule 11 of the Federal Rules of Civil

Procedure, give judges the authority they need to shift the cost burden of litigation abuse from

the defendant to the troll.") (Exh. 5).

### A.   Infringement Allegations Must Be Objectively Reasonable and Based on a Pre-Suit Analysis of the Claims of the Patent and the Accused Product

Conduct violates Rule 11 where, as here, it is not "objectively reasonable under the

circumstances." *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of*

*Account*, 618 F.3d 277, 297 (3d Cir. 2010) (internal quotation marks and citation omitted).

Where an attorney does not conduct a reasonable pre-filing infringement analysis, sanctions are

warranted.  *View Eng'g,* 208 F.3d at 986.  An attorney is not entitled to rely solely on the client's

claim interpretation or the client's assertion of infringement; counsel must construe the claims

independently and determine that each element of the claim appears in the accused device.  *Id.*;

*Judin v. United States*, 110 F.3d 780, 783 (Fed. Cir. 1997).  An attorney's proposed claim

construction is also subject to the Rule 11(b)(2) requirement that all legal arguments be

nonfrivolous.  *View Eng'g*, 208 F.3d at 986; *see also Raylon, LLC v. Complus Data Innovations,*

*Inc.*, 700 F.3d 1361, 1368 (Fed. Cir. 2012) ("[T]here is a threshold below which a claim

construction is so unreasonable that no reasonable litigant could believe it would succeed, and thus warrants Rule 11 sanctions.") (internal quotation marks and citation omitted)); *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314 (Fed. Cir. 2011) (upholding the district court's imposition of sanctions against plaintiff for filing an objectively baseless infringement suit because its pre-suit investigation compared the accused products to an unreasonably broad construction of a necessary claim term).

**B.      Plaintiffs Cannot Meet Their Burden of Demonstrating a Reasonable Pre-Suit Investigation**

Plaintiffs have the burden to demonstrate that they conducted a reasonable pre-filing inquiry. *Digeo, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1368 (Fed. Cir. 2007) ("Once a litigant moves based upon non-frivolous allegations for a Rule 11 sanction, the burden of proof shifts to the non-movant to show it made a reasonable pre-suit inquiry into its claim.") (emphasis omitted).  The '802 patent requires a "tiltable" platform on which the user stands that also "can either rotate about an axis or move in a direction which is parallel to said axis."  (Exh. 1, col. 13:24-25, 34-41)  The most cursory investigation demonstrates that Wii Balance Board does not "tilt," does not "rotate" and does not move "parallel" to an axis.  Instead, the Balance Board is bolted together and made of steel and aluminum alloys to provide a safe and stable platform.

## IV.      STATEMENT OF FACTS

The facts of this case demonstrate that Plaintiffs' invention cannot reasonably be interpreted to cover the Nintendo Wii Balance Board and there is no reasonable basis for asserting infringement.

**A.      The Asserted '802 Patent**

The '802 patent discloses a device called the "Cybersurfer" that detects "states of movement of a body of a user" for use in videogames.  The disclosed device is intended to

"reinforce the user's impression of virtual reality." (*Id.*, claim 1; col. 3:14)  Specifically, the device simulates the feeling of riding a wave on a surfboard or windsurfer, or riding on a snowboard for a user standing on the device.  (*Id.*, col. 6:46-55)  To achieve the feeling of engaging in a sport, the inventors emphasized actual movement of the support surface, and, in particular, at least three degrees of freedom of movement.  This movement is described in the abstract:  "Process and device for producing input data for a data processing system in which a user stands, sits, kneels, etc. with his entire body on a support plate of a bearing device, such that *this support plate is mounted on a base plate which can tilt and/or turn and/or move in the vertical direction*." (*Id.*, Abstract; emphasis added)

The Ithaca Complaint cites Claim 1 of the '802 patent as exemplary. Claim 1 requires:

A device for detecting certain states of movement of a body of a user and for generating signals corresponding to a result of a detection for subsequent processing in a data processing system, comprising:

a bearing device for supporting the body of the user;

said bearing device further comprising a support unit mounted in a **tiltable** manner on a base part;

said support unit comprising a standing part;

said standing part having a support surface for supporting the body of the user; and

a sensor device for detecting a direction and a magnitude of a position of a projection of the body's center of gravity into the support surface relative to a predetermined original position in the support surface,

wherein the direction and the magnitude of the **tilt** of the support surface are detected for generating corresponding sensor signals,

wherein the support surface is mounted on the base part of said bearing device such that it can either rotate about an axis or **move in a direction which is parallel** to said axis, said axis being one of:

vertically oriented when the support surface is oriented horizontally,

perpendicular to at least the support surface,

running through at least the base part and the support surface when the support surface is not titled,

running through at least the support surface and a tiltable mounting, or

running through at least the base part and a tiltable mounting,

wherein the sensor device detects either the direction and the magnitude of a rotational movement of the body of the user about the axis or detects at least the magnitude of a vertical movement of the body's center of gravity, and generates corresponding sensor signals.

(*Id.*, col. 13:19-55, emphasis added).[2]

Unlike the claims, which require actual movement, the specification recognizes the possibility of a device that does not include movement to simulate virtual reality :

The bearing device with a tiltable and/or vertically mobile and/or rotatable standing plate could also be replaced by a standing plate provided with a plurality of pressure sensors, in which case the movements executed by the user are determined through appropriate correlation of the measurement signals of these pressure sensors.

(*Id.*, col. 10:30-35)  That is, a "tiltable" and "vertically mobile" platform (the claimed device) "could also be replaced by" a different configuration – a standing plate with pressure sensors (that would not be "tiltable" and could not "move parallel").  The patentee, however, did not secure claims to systems relying on a standing plate with pressure sensors. The Plaintiffs cannot now interpret the claim language "tilt" and "move" to recapture subject matter that was expressly disclosed as an *alternative* to a tiltable and movable support surface.  *See Unique Concepts, Inc. v. Brown*, 939 F.2d. 1558, 1562 (Fed. Cir. 1991) (recognizing that claim limitations cannot be interpreted to capture subject matter that was disclosed as an "alternative" structure).  Indeed,

---

[2]  Independent claims 72 and 75 require the same key limitations.  Each of the remaining independent claims (28, 70, 71, 76 and 77) requires a rotatable support part, plate or surface, which Plaintiffs acknowledge is not present in the Wii Balance Board.  (Exh. 6, p. 3)

Plaintiffs could not even use the doctrine of equivalents to so stretch the claims. *Id.* at 1563; *Johnson & Johnston Assoc. Inc. v. R.E. Serv. Co., Inc.,* 285 F.3d 1046, 1054 (Fed. Cir. 2002).

1.       **The meaning of the "tilt" limitation**

Claim 1 requires "a support unit mounted in a tiltable manner on a base part." (Exh. 1, col. 13:24-25)  It also requires detection of the "direction and the magnitude of the tilt of the support surface." (*Id.*, col. 13:33-34)  The inventors did not give "tilt" a special meaning in the specification of the '802 patent, so it should be construed as having its plain and ordinary meaning: "the state of being tilted; a sloping position."[3]  Common sense, the specification and the prosecution history makes clear, however, that the slope has to at least be perceptible to the user--it cannot be microscopic.

a.       **The meaning of "tilt" as demonstrated by the specification**

The specification makes clear that the inventors understood "tilt" to require actual and perceptible movement of the support surface.  The inventors focused on providing a moving surface to enhance the feeling of simulating actual sports, such as surfing, snowboarding or skate boarding.  (*Id.* 1, col. 2:53-54; col. 3:1-6)  Figure 3 of the '802 patent shows the use of a ball-and-socket joint 24 and a pivot pin 22 in the mounting arrangement:[4]

---

[3]  *See* Exh. 7, *Random House Webster's Unabridged Dictionary* 1983 (2d ed. 1998); *see also* Exh. 8, *The American Heritage College Dictionary* 1417 (3d ed. 2000) (defining "tilt": "*n.* 1. The act of tilting or the condition of being tilted. 2.a. An inclination from the horizontal or vertical; a slant.").
[4]  The figures from the patents have been annotated for ease of reading.  Versions without annotations are shown in the respective patent exhibits attached to the Horwitz Declaration.



Fig. 3

This mounting arrangement "enables the standing plate 18 to be tilted relative to the base plate or base cradle 12. . . ." (*Id.*, col. 8:15-17)

Indeed, the specification discusses the need to "limit the maximum angle of tilt of the support plate to a relatively small value of 10° to 15°" "to make it easier for the user to keep his balance." (*Id.*, col. 4:4-6)  This "relatively small" amount of tilt is far more than microscopic and is more than enough for the user to feel the movement.  The inventors also discuss the use of a safety handle so that "[w]hen simulating surf-riding, snowboarding or similar, the user can *take up an inclined position*, as would be required in reality to balance the dynamic forces occurring, with the aid of the handle." (*Id.*, col. 6:51-55; emphasis added)  The specification is clear that "tilt" means a sloping position or angular displacement of the surface that is significant enough to be perceptible to the user, and that "mounted in a tiltable manner" means mounted in such a way as to allow for sloping or tilting that is perceptible to the user.  The specification is also clear that the inventors considered "tilt" to involve actual movement of the support surface that the user of the '802 device would feel during game-play.  Nothing in the specification supports an

interpretation of "tilt" as microscopic movement that would not be seen or felt by the user.
Moreover, as outlined above the specification expressly disclosed a device with a standing plate
using pressure sensors as an alternative to the device with a platform that "tilts." The "tilt"
limitation cannot be interpreted to recapture devices expressly disclosed as providing an
*alternative* to "tiltable." *Unique Concepts*, 939 F.2d. at 1562-63.

> b.      **The meaning of "tilt" as demonstrated by the prosecution history**

The prosecution history also shows that "tilt" requires perceptible movement of the
surface. As the inventors admitted, the prior art disclosed devices that provided for "tiltability"
of a support surface, such as U.S. Patent No. 5,613,690 to McShane ("McShane Patent"; Exh. 9).
(*See, e.g.*, Exh. 11, Response Under 37 C.F.R. 1.116 dated May 21, 2001 at p. 10)



*Figure 1 of McShane Patent*

The inventors noted: "In contrast to the ['802 patent], the platform 12 in McShane is merely
angularly displaceably (i.e., tiltably) mounted to the base platform 14 via a convex support 20.
Moreover, it is clear from these figures, that the convex support 20 merely allows the platform
12 to rock or angularly tilt relative to a horizontal plane (see col. 4, lines 9-14)." (*See* Exh. 12,
Appeal Brief at p. 29) The inventors recognized that the mechanical springs 36 in McShane
would allow for actual and perceptible "tilt" of platform 12.

The inventors also distinguished the device in figures 5 through 6 of U.S. Patent No. 5,283,555 to Ward ("Ward Patent"; Exh. 13) because that device disclosed only a "support surface 26a [that] is not tiltable." (Exh. 14, Amendment Under C.F.R. 1.111 dated Jan. 16, 2001 at p. 17)



*Figure 5 of Ward Patent*

The plate 26 in Ward has upper and lower mating halves *26a* and *26b* which together define a hollow cylinder. (Exh. 13, col. 4:23-25) The upper half rests on caster bearings 28. (*Id.,* col. 4:18) In order to obtain the '802 patent, the inventors distinguished the Ward platform, arguing "[m]oreover, the support surface 26a is shown resting [on] supports 28 so that there can be no up-and-down movement of the support surface, much less, movement parallel to an axis." (Exh. 14, Amendment Under C.F.R. 1.111 dated January 16, 2001, p. 18) They also argued that "[i]n contrast to the invention, the platform 26 in Ward is merely horizontally movable, not tiltable and rotatable or tiltable and movably [sic] up and down." (Exh. 11, Response Under 37 C.F.R. 1.116, dated May 21, 2001, p. 21; *see also* Exh. 12, Appeal Brief at 39-43 discussing Ward patent) This is only true, of course, if microscopic bending of Ward's metal supports does not satisfy the "tilt" limitation.

Thus, the specification and prosecution history contradict any interpretation of the "tilt" limitation as microscopic. "Tilt" is not merely conceptual, but requires real motion and, at a

minimum, a support surface that can be angularly displaced or sloped to an extent that is perceptible to the user, giving a sense of actual movement.

### 2.    The meaning of the "move parallel" limitation

Claim 1 also requires a support surface that is mounted on the base of the bearing device such that it can "either rotate about an axis or *move* in a direction which is *parallel* to said axis." (Exh. 1, col. 13:38-41; emphasis added)  The specification repeatedly emphasizes the importance of significant vertical "movement," emphasizing the need to control or limit the extent of such movement using, for example: "a vertical restoring device," "a vertical detent device," and "a vertical movement limiting device."  (*Id.,* col. 4:40; 5:16; 5:36-37)  Moreover, as outlined above the specification expressly disclosed a device with a standing plate using pressure sensors as an *alternative* to the device with a platform that "moves parallel."  The "move parallel" limitation cannot be interpreted to recapture devices expressly disclosed as an alternative to those that "move parallel."  *Unique Concepts*, 939 F.2d at 1562.

During prosecution, the inventors made it clear that the "move parallel" limitation requires "significant" up-and-down movement.  They emphasized this limitation to distinguish their purported invention from prior art devices.  For example, they distinguished U.S. Patent No. 5,860,861 to Lipps et al. ("Lipps Patent"; Exh. 15) as incapable of "significant" up-and-down movement.  (Exh. 16, Appeal Reply, dated January 3, 2002 at p. 7.)  Lipps' riding board controller is supported by spring 62 at one end and rubber bushings 72 at the other end.



*Figure 3 of Lipps Patent*

The inventors argued that: "[t]he [rubber] bushings 72 are clearly not designed to allow the platform 26 to move downwardly," emphasizing that "significant downward movement" is required to meet this limitation.  (Exh. 16, Appeal Reply Brief at 7)  That is, as with the tilt limitation, the inventors understood that the "move parallel" limitation required actual and perceptible (or "significant") movement of the support surface.  As the patentees explained to the Patent Office, the rubber bushings disclosed by Lipps do not allow the standing platform to "move parallel" within the meaning of the claims because such bushings would not "allow for significant downward movement by virtue of their being made of rubber."  (*Id.*)  Thus, the prosecution history contradicts any interpretation of "parallel" movement that would cover only "microscopic" movement.

**B.    Nintendo's Accused Wii Balance Board**

The Balance Board is a Wii accessory having a horizontal platform on which the user stands.  (Exh. 10, Yamazaki Decl. ¶ 3)



*The Nintendo Wii Balance Board*

Unlike the '802 patent, the Wii Balance Board itself does not move.  Instead the player moves his body to simulate various activities, examples of which are shown below (*Id.* ¶ 4)



Four support legs are attached to the bottom side of the Wii Balance Board, one in each corner of the board.  (*Id.* ¶¶ 5-6)  In the photograph below, the plastic housing has been removed and the interior of the Wii Balance Board is readily visible (*Id.* ¶ 5)[5]:

---

[5]  Nothing more than a screwdriver is needed to remove the housing from the bottom of the Wii Balance Board.  If it would assist the Court, Nintendo would be happy to provide a physical sample of a Wii Balance Board for the Court.



*Photograph of bottom side of Nintendo Wii Balance Board with housing removed*

The four legs are shown, securely mounted at each corner with metal bolts. (*Id.* ¶ 6) Each leg contains a load or weight sensor, called "load cell." (*Id.* ¶ 7) The load cells are assembled from two metal plates and a small aluminum block held together with a metal bolt (labeled "1" below). (*Id.* ¶¶ 7-8) Close-ups of the load cells, which are securely bolted to the internal structural housing with metal bolts (labeled "2" below), are shown below:



| *Load cell from the top* | *Side view of load cell: top plate, aluminum sensor block and bottom plate* | *Solid aluminum sensor block with strain gauge attached* |
|---|---|---|

(*Id.* ¶¶ 7-9) As the user moves on the Wii Balance Board, the load cells detect weight or "load" on the particular leg using strain gauges, which are visibly attached to the outside of the load cells. (*Id.* ¶¶ 7-10) As is also well known, a strain gauge is a sensor that generates an electrical

signal corresponding to the strain (or microscopic bending) of an object.  That bending is microscopic – it is too small to be visible without a powerful microscope and is on the order of 80 microns (thousandths of a millimeter) when a 220 pound player places all his weight on one of the Wii Balance Board's four load cells.  *Id.*, ¶ 10)  A human hair, for example, is 60-120 microns in diameter.  (Exh. 17, p. 3)  Such microscopic bending can nevertheless generate an electrical signal that is communicated to the Wii Balance Board's electronic components.  (Exh. 10, Yamazaki Decl. ¶ 11)

The Wii Balance Board platform or surface is securely mounted in all four corners to provide the user with a stable surface on which to stand.  (*Id.* ¶¶ 3-8, 12)  The Wii Balance Board has no hinges, pivots, joints, springs or bearings that allow tilt, rotation or up-and-down movement of the surface.  (*Id.* ¶ 13)  The Wii Balance Board platform itself does not move during play.  (*Id.* ¶¶ 4, 12-13)  Rather, it is always the player herself who does the moving and not the Wii Balance Board.  (*Id.*)






*Images of Nintendo Wii Fit Plus Games: Skateboard Arena; Hula Hoop; and Obstacle Course*

**C.      Pre-Suit Licensing Discussions and Nintendo's Efforts to Resolve This Dispute**

Ithaca Ventures k.s. is a foreign entity, owned by the inventors of the asserted patent and operating under the laws of the Slovak Republic.  (Complaint, D.I. 1, ¶¶ 1, 10)  Ithaca Development, LLC is the exclusive U.S. licensee of the asserted patent.  (*Id.* ¶ 2)  Its principal place of business is in Dallas, Texas.  (*Id.*)  Plaintiffs appear to be non-practicing entities with no ongoing business beyond patent enforcement.

Before filing suit, Plaintiffs retained "patent monetization" firm IP Navigation (or "IP Nav") to propose a licensing arrangement with Nintendo.  During Nintendo's discussions with IP Nav, Nintendo identified fundamental differences between Nintendo's Wii Balance Board and the '802 patent.  Unhappy with Nintendo's decision not to take a license, Ithaca decided to go to court.

Shortly after Plaintiffs filed suit, Nintendo's in-house counsel had a conversation with Plaintiffs' principals, and again explained that Plaintiffs' infringement claims are not reasonable. Nintendo's litigation counsel later sent a detailed letter (on July 12th) explaining why Nintendo does not infringe and giving Plaintiffs the opportunity to dismiss their claims.  (Exh. 3) Plaintiffs' counsel responded on August 1st and argued that the Wii Balance Board infringes because of microscopic bending (i.e., less than the thickness of a human hair) of metal load cells contained in each of the four corners of the board.  (Exh. 6, pp. 4-5)  Plaintiffs acknowledge that

the Wii Balance Board does not "rotate" about an axis, but argues that this microscopic bending satisfies the "tilt" and "parallel" movement limitations of the claims. (*Id.*) Nintendo's counsel explained in an August 6th letter that such microscopic bending cannot meet those limitations, offering Plaintiffs another opportunity to walk away. (Exh. 4)  Plaintiffs did not take the opportunity to dismiss their Complaint, thus, Nintendo served this Motion on August 29, 2013, which started the clock on Rule 11's "safe harbor" provision. (Exh. 2)

**V.   ARGUMENT**

Under any reasonable interpretation, the claims of the '802 patent cannot read on the accused Wii Balance Board.  Hence, the infringement allegations are frivolous and this case should be dismissed.

**A.    Ithaca and Its Counsel Failed to Conduct a Proper Pre-Suit Investigation**

As discussed above, Claim 1 requires a support surface:

- that is "mounted in a **tiltable** manner" ;

- "wherein the direction and the magnitude of the **tilt** of the support surface are detected"; and,

- "wherein the support surface is mounted on the base part of said bearing device such that it can either rotate about an axis or **move in a direction which is parallel** to said axis."

(Exh. 1, col. 13:25, 34-40; emphasis added)  A reasonable pre-suit investigation would have demonstrated that the Wii Balance Board cannot meet any of these limitations. [6]

**1.    The Wii Balance Board Does Not Meet the "Tilt" Limitation**

The "tilt" limitation is not met by the Wii Balance Board because the Wii Balance Board provides an unmoving, horizontal surface for the user.  The inventors of the '802 patent, on the

---

[6]  This motion does not outline each claim limitation not met by the Wii Balance Board.  Rather, it focuses on missing limitations that are most apparent from a proper pre-filing investigation.

other hand, focused on actual, perceptible movement when they included the "tilt" limitation, emphasizing that 10-15 degrees was a "relatively small" amount of "tilt" and that it would be beneficial to limit the invention to that amount of tilt "to make it easier for the user to keep his balance." (*Id.*, col. 4:3-6)  The Wii Balance Board surface is not "mounted in a tiltable manner" as required by the claim.  It contains no pivots, hinges, joints, springs or bearings that permit "tilt"; rather, it is securely mounted with metal bolts.  (Exh. 10, Yamazaki Decl. ¶¶ 6-8, 13)  The Wii Balance Board surface is not angularly displaceable; it does not slope or tilt from side to side during play within the meaning of the claims.

Plaintiffs admit that any bending of the load cells is not visible and, nonetheless, assert that imperceptible microscopic bending meets the "tilt" limitation.  (Exh. 6, p. 4-5)  Plaintiffs claim to have conducted experiments by placing weights on the Wii Balance Board and taking measurements of such bending, but failed to provide the actual units of their measurements.  (*Id.*)  Load analyses indicate that the units must be microns, demonstrating that bending on the order of 80 microns occurs when a load simulating a 220 lb. person is placed on a single load cell.  (Exh. 4, p. 1; Exh. 10, Yamazaki Decl. ¶ 10)[7]  This is about the thickness of a single human hair.  (Exh. 17, p. 3)  It is also less than the thickness of a dollar bill.  (Exh. 18, p. 2)  Such bending cannot satisfy the "tilt" limitation under any reasonable claim interpretation.  Plaintiffs' interpretation would effectively delete the "tilt" limitation from the claim and disregards arguments the inventors made to obtain their patent.  Infringement suits based on such unreasonable and frivolous claim constructions violate Rule 11.  *See, e.g., Raylon LLC*, 700 F.3d at 1368; *Eon-Net LP*, 653 F.3d at 1314.

---

[7] In actual game play the bending would be significantly less because a player's weight would be spread across multiple load cells.  (Exh. 10, Yamazaki Decl. ¶10)

**2.      The Wii Balance Board Does Not Meet the "Parallel Movement" Limitation**

Likewise, the prosecution history demonstrates that the Wii Balance Board surface does not "move parallel" within the meaning of the claims.  Plaintiffs' "move parallel" argument (Exh. 6, p. 5) fails for the same reasons their "tilt" argument fails: microscopic bending of the load cells does not allow the surface to "move parallel" within the meaning of the claims.

During prosecution, the inventors argued that the rubber bushings 72 in Lipps prevent downward movement of one of the ends (52) of the platform because "[t]he bushings 72 are clearly not designed to allow the platform 26 to move downwardly," emphasizing that "significant downward movement" is required to meet this limitation.  (Exh. 16, Appeal Reply Brief at 7)  (*See* Figure 3 of Lipps patent above; *see also* Exh. 15)  Microscopic bending is not "significant" movement.  If Lipps' rubber bushings do not permit significant up-and-down movement within the meaning of the claims, the Wii Balance Board's metal bolts attaching the load cells must also preclude such movement of the surface of the board.  Likewise, if the caster bearings of Ward preclude "parallel" movement, so do the Wii Balance Board's metal load cells.

**B.      Ithaca and Its Attorneys Should Both Be Sanctioned for Their Failure to Conduct a Reasonable Pre-Suit Investigation**

Sanctions against Ithaca and its counsel are appropriate because the infringement allegations are not well grounded in fact or in law.  *Judin*, 110 F.3d at 785.  Rule 11 specifically states that sanctions should be directed to deterring repetition of the conduct.  Fed. R. Civ. P. 11(c)(4).[8]  Such sanctions can be monetary or non-monetary in nature and may include "striking the offending paper; issuing an admonition, reprimand, or censure; requiring participation in seminars or other educational programs; ordering a fine payable to the court; [and] referring the

---

[8] *See also* Randall R. Rader et al., Op-Ed, *Make Patent Trolls Pay in Court*, N.Y. Times, June 4, 2013 (discussing role of Rule 11 sanctions in shifting the costs of litigation abuse) (Exh. 5).

matter to disciplinary authorities." Fed. R. Civ. P. 11 Advisory Committee's Note. "[I]f warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion." *Id.*; *see also View Eng'g*, 208 F.3d at 988 (affirming award of monetary sanctions for Rule 11 violations). Dismissal is also proper where, as here, a complaint was brought in violation of Rule 11 and there is not proper support for the allegations in the complaint.

Nintendo respectfully requests, therefore, that the Court sanction Ithaca and its counsel, including dismissal of the Complaint and an award of Nintendo's fees and costs in defending this action.

## VI.     CONCLUSION

As outlined above, Ithaca's patent infringement allegations cannot reasonably be supported and the case should be dismissed with prejudice and sanctions imposed pursuant to Fed. R. Civ. P. 11(c).

OF COUNSEL:

Jerry A. Riedinger
Tyler C. Peterson
Kirstin E. Larson
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Tel:  (206) 359-8000

C. Mark Kittredge
PERKINS COIE LLP
2901 N. Central Avenue, Suite 2000
Phoenix, AZ   85012-2788
Tel:  (602) 351-8000

Original Service Date:  August 29, 2013
Filed & Served Date:

1120866/ 40335

POTTER ANDERSON & CORROON LLP

By:    */s/ Richard L. Horwitz*
        Richard L. Horwitz (#2246)
        David E. Moore (#3983)
        Bindu A. Palapura (#5370)
        Hercules Plaza, 6th Floor
        1313 N. Market Street
        Wilmington, DE  19801
        Tel:  (302) 984-6000
        rhorwitz@potteranderson.com
        dmoore@potteranderson.com
        bpalapura@potteranderson.com

*Attorneys for Defendants Nintendo of America*
*Inc. and Nintendo Co., Ltd.*