**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ITHACA VENTURES k.s. and ITHACA DEVELOPMENT, LLC, <br><br>  Plaintiffs, <br><br> v. <br><br> NINTENDO OF AMERICA INC. and NINTENDO CO., LTD., <br><br>  Defendants. | C.A. No. 13-824-GMS |

**PLAINTIFFS ITHACA VENTURES K.S.'S AND ITHACA DEVELOPMENT, LLC'S
OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE
<u>TO THE WESTERN DISTRICT OF WASHINGTON</u>**

*Of Counsel:*

Randall J. Sunshine
Ted S. Ward
Kim Zeldin
Edward A. Klein
LINER GRODE STEIN YANKELEVITZ
SUNSHINE REGENSTREIF &
TAYLOR LLP
1100 Glendon Avenue, 14th Floor
Los Angeles, California 90024.3503
(310) 500-3500
rsunshine@linerlaw.com
tward@linerlaw.com
eklein@linerlaw.com
kzeldin@linerlaw.com


Kenneth L. Dorsney (#3726)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801-1494
(302) 888-6800
kdorsney@morrisjames.com

Attorneys for Plaintiffs
ITHACA VENTURES k.s. and ITHACA
DEVELOPMENT, LLC

Dated: September 30, 2013

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

II.    STATEMENT OF NATURE AND STATE OF THE PROCEEDINGS ...........................2

III.   SUMMARY OF THE ARGUMENT ...................................................................3

IV.   STATEMENT OF FACTS ................................................................................4

    A.    Background Facts.................................................................................4

    B.    Facts Relevant To The Transfer Motion ....................................................4

V.    ARGUMENT ...............................................................................................6

    A.    The *Jumara* Private Interest Factors Weigh Against Transfer ...............................6

        1.    Ithaca's Forum Choice Weighs Against Transfer.......................................6

        2.    Defendant's Preference Weighs Only Slightly In Favor Of Transfer..........8

        3.    The Alleged Wrongful Activity Occurs Across The United States; This Factor Is Neutral ................................................................8

        4.    The Convenience of the Parties Is Not Served By Transfer ......................9

        5.    The Convenience Of The Witnesses Does Not Favor Transfer................11

        6.    The Location of Books And Records Does Not Favor Transfer ...............13

    B.    The Public Interest Factors Favor Adjudication In This Court............................14

        1.    Practical Considerations Do Not Favor Transfer.......................................14

        2.    The "Court Congestion" Factor Does Not Favor Transfer ......................15

        3.    Washington Does Not Have A Strong Local Interest In This Patent Suit ................................................................................16

        4.    Public Policy Does Not Favor Transfer .................................................16

VI.   CONCLUSION...........................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant: small-caps;">Cases</span>

*1st Source Bank v. Merritt*,
759 F. Supp. 2d 505 (D. Del. 2011)..................................................................3, 14

*Acquisition LLC v. iBasis*,
2012 WL 5199118 (D. Del. 2012) ...........................................................6, 12, 14

*ADE Corp. v. KLA-Tencor Corp.*,
138 F. Supp. 2d 565 (D. Del. 2001)......................................................................6

*Brinkmeier v. Exergen Corp.*,
2011 WL 8948 (D. Del. Jan 3, 2011).................................................................11

*Cellectis S.A. v. Precision Biosciences, Inc.*,
858 F. Supp. 2d 376 (D. Del. 2012)..............................................................8, 12

*CNH Am. LLC v. Kinzenbaw*,
2009 WL 3737653 (D. Del. Nov. 9, 2009) .........................................................6, 8

*Fuisz Pharma v. Theranos, Inc.*,
2012 WL 1820642, at *12 (D. Del. May 18, 2012)...................................................9

*Gielata v. Heckmann*,
2010 WL 3940815 (D. Del. Oct. 6, 2010) ...........................................................10

*Helicos Biosciences Corp. v. Illumina, Inc.*,
858 F. Supp. 2d 367 (D. Del. 2012).....................................................................16

*Human Genome Sci, Inc. v. Genentech*,
2011 WL 2911797 (D. Del. July 18, 2011) .........................................................15

*In re Link_A_Media*,
662 F.3d at 1223 ...........................................................................................7, 14

*In re Nintendo, Ltd.*,
589 F.3d 1194 (Fed. Cir. 2009)..........................................................................14

*In re TS Tech USA Corp.*,
551 F.3d 1315 (Fed. Cir. No. 2008).....................................................................15

*In re Zimmer Holdings, Inc.*,
609 F.3d 1378 (Fed. Cir. 2010).............................................................................8

*ING Bank, FSB. v. Palmer*,
  2010 WL 3907825 (D. Del. Sep. 29, 2010) ........................................................................11

*Intellectual Ventures I LLC v. Altera Corporation*,
  842 F. Supp. 2d 744 (D. Del. 2012) .......................................................................... passim

*Joao Control & Monitoring Systems, LLC v. Ford Motor Company*,
  2013 WL 4496644 (D. Del. Aug. 21, 2013) .................................................................1, 7, 13

*Jumara v. State Farm Ins. Co.*,
  55 F.3d 873 (3d Cir. 1995)........................................................................................ passim

*Mitek Sys., Inc. v. United Servs. Auto Ass'n*,
  2012 WL 3777423 (D. Del. Aug. 30, 2012) ........................................................................9

*Nice Sys., Inc. v. Witness Sys., Inc.*,
  2006 WL 2946179 (D. Del. Oct. 12, 2006) ........................................................................8

*Personalized User Model LLP v. Google, Inc.*,
  2009 WL 3460767 (D. Del. 2009) ........................................................................................8

*Pfizer Inc. v. Sandoz Inc.*,
  2010 WL 256548 (D. Del. Jan. 20, 2010)..........................................................................11

*Praxair, Inc. v. ATMI Inc.*,
  2004 WL 883395 (D. Del. Apr. 20, 2004)............................................................................6

*Semcon Tech, LLC v. Intel Corp.*,
  2013 WL 126421 (D. Del. Jan. 8, 2013)........................................................................7, 15

*Shutte v. Armco Steel Corp.*,
  431 F.2d 22 (3d Cir. 1970)................................................................................................4, 6

*Smart Audio Techssmart., LLC v. Apple, Inc.*,
  910 F. Supp. 2d 718 (D. Del. 2012) ..................................................................................16

*Textron Innovations, Inc. v. The Toro Co.*,
  2005 WL 2620196 (D. Del. Oct. 14, 2005) ......................................................................15

*TriStrata Tech., Inc. v. Emulgen Labs., Inc.*,
  537 F. Supp. 2d 635 (D. Del. 2008)......................................................................................6

*Wacoh Co. v. Kionix Inc.*,
  845 F. Supp.2d 597 (D. Del. 2012).....................................................................................17

**STATUTES**

35 U.S.C. § 271.................................................................................................................8

35 U.S.C. § 271(a)............................................................................................................8

**OTHER AUTHORITIES**

Lemley, Mark A., *Where to File Your Patent Case*, 38 AIPLA Q.J. 401 (2010)......................1, 15

I.     <u>**INTRODUCTION**</u>

Plaintiffs Ithaca Development, LLC ("Ithaca Development") and Ithaca Ventures k.s.'s ("Ithaca Ventures") (collectively "Ithaca" or "Plaintiffs") decision to litigate their patent infringement action in Delaware is rational and legitimate; Defendants present no compelling reason to disturb Plaintiffs' choice of forum.  The private and public factors at issue in a motion to transfer support a decision by this Court to deny Defendants' motion to transfer.

Ithaca Ventures is a Munich, Germany based limited partnership that was formed in 2009 to, among other things, develop, sell and license the technology of Peter Lutz and Maximilian Klein, including the patent-in-suit.  Ithaca Development was organized in the State of Delaware as the exclusive licensee of one of the patents owned and developed by Ithaca Ventures, with the business objective of licensing this patent.  Nintendo is a large conglomerate with a presence around the world.

Ithaca Development, as the exclusive licensee, filed this action and chose to avail itself of the "advantages of Delaware corporate law" and to the "risk of suit in Delaware."  *See Joao Control & Monitoring Systems, LLC v. Ford Motor Company*, 2013 WL 4496644, at *3 (D. Del. Aug. 21, 2013).  The infringing product, by Defendants' own admission, is sold in Delaware. The judges in this District also have significant patent experience.  From 2000 to 2010 more than 1000 patent cases were heard in this District compared to 392 in Defendants' proposed forum, the Western District of Washington.  *See* Ex. Table 2, Lemley, Mark A., *Where to File Your Patent Case*, 38 AIPLA Q.J. 1, App. A  (Fall 2010).  Importantly, Delaware is convenient for Plaintiffs' two key percipient witnesses, the inventors of the patent-in-suit (and the principals of Ithaca Ventures), who reside in Munich, Germany and can fly directly to Philadelphia, which is in close proximity to this Court.  The District of Washington, Defendants' alternative forum,

would be significantly less convenient for the Munich-based inventors, as there are no direct flights to Seattle.

Defendants have not met their "uphill battle" of overcoming Plaintiffs' forum choice. They primarily attack Plaintiffs' choice of venue with a false factual allegation. Defendants incorrectly argue that Ithaca Development is and has been a Texas corporation since 2010 and therefore Delaware is not its "home turf." Defendants confuse Ithaca Development, a Delaware limited liability company, with a Texas company bearing the same name, but which has no relationship with Plaintiffs. A closer look at the evidence Defendants submit on the point would or should have made this obvious to them. Defendants' motion is also based upon an exaggeration of the connection of this patent litigation to Washington. Defendants' key documents and witnesses relating to the design of the infringing product are in Japan. Defendants' reliance on the location of marketing documents in Washington and witnesses who are adept as users of the infringing product as a basis for transfer is misplaced. Finally, while it may be more convenient for Defendants' two identified Japan-based witnesses to travel to Washington, the convenience of Plaintiffs' witnesses should be given more weight, particularly in light of the vast financial resources available to Defendants, compared with Plaintiffs'. Therefore, this Court should deny Defendants' motion to transfer.

## II.   <u>STATEMENT OF NATURE AND STATE OF THE PROCEEDINGS</u>

The patent infringement complaint was filed by Plaintiffs on May 9, 2013 against Nintendo of America Inc. ("NOA") and Nintendo Co., Ltd. ("NCL") (collectively "Nintendo"). Complaint (D.I. 1). Ithaca alleges Nintendo's Wii Balance Board infringes U.S. Patent No. 6,624,802 (the '802 Patent"). Nintendo filed an Answer and Counterclaims to the Complaint on August 29, 2013 (D.I. 9) and simultaneously filed this motion to transfer venue to the Western

District of Washington.  Nintendo filed a motion for sanctions pursuant to Federal Rule of Civil

Procedure 11 on September 19, 2013.  D.I. 16.  Ithaca filed its Answer to Nintendo's

Counterclaims on September 23, 2013.  D.I. 19.

## III.   SUMMARY OF THE ARGUMENT

The Court should not transfer this case to the Western District of Washington.  Ithaca

chose to file this action in Delaware — the state in which it was organized — and its decision is

entitled to deference.  Nintendo fails to articulate anything other than its preference to litigate the

case in Washington as a reason to transfer the case, and that is not sufficient to meet its heavy

burden.

The Third Circuit considers certain private and public factors in determining whether to

transfer venue.  The private interest factors at issue are:  (1) the plaintiffs' forum preference; (2)

the defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of

the parties as indicated by their relative physical and financial condition; (5) the convenience of

the witnesses; and (6) the location of the books and records.  *Jumara v. State Farm Ins. Co.*, 55

F.3d 873, 879 (3d Cir. 1995).  The public interest factors at issue are:  (1) practical

considerations that could make the trial easy, expeditious, or inexpensive; (2) the relative

administrative difficulty in the two fora resulting from court congestion; (3) the local interest in

deciding local disputes at home; and (5) the public policies of the fora.  *Id.*

Transfer will be denied if the factors are evenly balanced or weigh only slightly in favor

of transfer.  *Intellectual Ventures I LLC v. Altera Corporation*, 842 F. Supp. 2d 744, 750-51 (D.

Del. 2012); *1st Source Bank v. Merritt*, 759 F. Supp. 2d 505, 508 (D. Del. 2011) (the moving

party bears the burden "to establish that the balance of the interests strongly weighs in favor of

transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in

favor of transfer"); *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir. 1970) ("unless the balance of convenience of the parties is strongly in favor of the defendant, the plaintiff's choice of forum should prevail").  An evaluation of the factors here weighs against transfer.

## IV.   STATEMENT OF FACTS

### A.    Background Facts

In or about 1997, Messrs. Klein and Lutz invented a method and device for detecting specific states of movement of a user.  On March 7, 1997, Messrs. Klein and Lutz filed a patent application with the German Patent and Trademark Office, which matured into a patent issued by the European Union on November 21, 2001.  Answer (D.I. 9), ¶ 13.  In 1985, Nintendo introduced the Nintendo Entertainment System.  Answer (D.I. 9), ¶ 14.  In May of 1999 Ithaca Ventures contacted Nintendo to discuss use of its technology for Nintendo's gaming system.  Lutz Decl. ¶ 3, Ex. A.  In response to Ithaca Venture's inquiries, Nintendo responded that it was not interested in such technology for their game systems.  Lutz Decl. ¶ 4, Ex. B.

On September 23, 2003 the '802 Patent was issued.  Answer (D.I. 9), ¶ 18.  In July 2007, Nintendo introduced their Wii Balance Board for use with the Wii Fit game and other games.  Answer (D.I. 9), ¶ 19.  The Wii Balance Board is a gaming device that detects a person's position and movement and infringes the '802 Patent.  Answer (D.I. 9), ¶ 19.  Since its introduction, Nintendo has sold over 13 million Balance Boards for over $1 billion in the United States alone.  Answer (D.I. 9), ¶ 21.

### B.    Facts Relevant To The Transfer Motion

Plaintiff Ithaca Development is a limited liability company organized for the first time in 2013 in the State of Delaware, with its principal place of business in Dallas, Texas.  Declaration of Erich Spangenberg In Support of Ithaca Ventures k.s. and Ithaca Development, LLC's

4

Opposition to Defendants' Motion to Transfer Venue to the Western District of Washington ("Spangenberg Decl.") ¶ 3.  Plaintiff Ithaca Ventures is a limited partnership under the laws of the Slovak Republic.  Ithaca Development is the exclusive U.S. licensee of the '802 patent, whose inventors are Maximilian Klein and Peter Lutz, joint owners of Ithaca Ventures. Spangenberg Decl. ¶ 3.  The inventors are from Munich.  Declaration of Peter Lutz in Support of Ithaca Ventures k.s.'s and Ithaca Development, LLC's Opposition to Defendants' Motion to Transfer Venue to the Western District of Washington ("Lutz Decl.") ¶ 2.  Ithaca Ventures was formed in 2009, among other things, to develop, sell and license the technology of Messrs. Lutz and Klein, including the patent-in-suit.  By contrast, Nintendo has a multinational presence and has significant net sales (for example, for the year ended March 31, 2011, Nintendo had over $12 billion in net sales, Declaration of Kim Zeldin in Support of Ithaca Ventures k.s.'s and Ithaca Development, LLC's Opposition to Defendants' Motion to Transfer to the Western District of Washington ("Zeldin Decl.") ¶ 2, Ex. A)).

NCL is a Japanese company and NOA is a Washington Corporation.  The infringing product, the Wii Balance Board, is designed and developed in Japan.  Declaration of Vincent Ajay Singh In Support of Motion To Transfer ("Singh Decl.") ¶ 4.  NOA is responsible for marketing, sales and distribution of the Wii Balance Board.  Singh Decl. ¶ 5.  The key documents and witnesses on the issue of liability are therefore located in Japan.  Nintendo sells its products throughout the United States, including in Delaware.  Answer, ¶ 7.

## V.     ARGUMENT

### A.     The *Jumara* Private Interest Factors Weigh Against Transfer

#### 1.     Ithaca's Forum Choice Weighs Against Transfer

"It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice * * * should not be lightly disturbed." *Shutte*, 431 F.2d at 25.  This factor weighs strongly against transfer, particularly because Ithaca chose to litigate this case in Delaware on its home turf -- *i.e.*, its state of incorporation or state of organization.  *See Praxair, Inc. v. ATMI Inc.*, 2004 WL 883395, at *2 (D. Del. Apr. 20, 2004)  A party's "situs of incorporation" is its "home turf"); *Intellectual Ventures,* 842 F. Supp. 2d at 754 ("The Court agrees with those cases that include a corporate entity's state of incorporation as part of its 'home turf.'"); *Acquisition LLC v. iBasis*, 2012 WL 5199118, at *3 (D. Del. 2012) (A limited liability company "may rightfully consider its state of organization to be its 'home forum'").

Because Ithaca chose to litigate this case in its state of incorporation, Nintendo bears a heavy burden to prove that the other *Jumara* factors strongly outweigh Ithaca's choice of forum. *See CNH Am. LLC v. Kinzenbaw*, 2009 WL 3737653, *2 (D. Del. Nov. 9, 2009) ("This [burden on the defendant] is particularly true in cases where the plaintiff is a corporate entity that is incorporated in Delaware, 'because a corporation's decision to incorporate in a particular state is a rational and legitimate reason to choose to litigate in that state.'") (quoting *TriStrata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 643 (D. Del. 2008)); *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 567-68 (D. Del. 2001) ("Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail."); *Shutte*, 431 F.2d at 25 ("[U]nless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of

6

forum should prevail."). Ithaca Development chose to avail itself of the "advantages of Delaware corporate law" and to the "risk of suit in Delaware" by forming and being incorporated there, leaving Nintendo with an "uphill battle" to demonstrate inconvenience. *See Joao Control & Monitoring Systems, LLC v. Ford Motor Company*, 2013 WL 4496644, at *3.

Nintendo mistakenly argues that Ithaca Development, LLC changed its state of incorporation from Texas to Delaware shortly before filing this action and its "tactical reincorporation in Delaware" means that its decision to file in Delaware should not be entitled to any weight. This is factually incorrect.[1] The entity called Ithaca Development, LLC that is a Plaintiff in this lawsuit was never in incorporated in Texas and was initially formed in April 2013 in Delaware. Spangenberg Decl. ¶ 2, Ex. A. Its state of incorporation is Delaware and its principal place of business is in Dallas, Texas. There are apparently two unrelated entities bearing the name Ithaca Development, LLC; Nintendo mistakenly confuses the two. The other Ithaca Development, LLC entity located on Westlaw by Nintendo's outside counsel, Richard L. Horwitz, is a Texas limited liability company, formed in 2010, with its principal place of business in Houston Texas. Declaration of Richard L. Horwitz In Support of Nintendo's Motion to Transfer Venue to the Western District of Washington ("Horwitz Decl." Ex. 1). The manager of this Houston, Texas company listed on Mr. Horwitz's Westlaw printout has no affiliation whatsoever with the Ithaca Development, LLC that is a Plaintiff in this action. Spangenberg Decl. ¶¶ 3-4. Therefore, the Court should accord maximum deference to this factor.[2]

---

[1] It is also legally incorrect because a plaintiff's choice of Delaware as a forum weighs strongly in the plaintiff's favor even if the plaintiff is not incorporated in Delaware, and has no "connection to Delaware at all." *Semcon Tech, LLC v. Intel Corp.,* 2013 WL 126421, at *2, 5 (D. Del. Jan. 8, 2013).

[2] The cases relied upon by Nintendo are not on point. In *In re Link_A_Media*, the Federal Circuit held that the district court had placed too much weight in that particular case on plaintiff's choice (footnote continued)

### 2.     Defendant's Preference Weighs Only Slightly In Favor Of Transfer

Nintendo's preference is only entitled to slight weight.  *Nice Sys., Inc. v. Witness Sys., Inc.*, 2006 WL 2946179, at *2 (D. Del. Oct. 12, 2006) ("A transfer is not warranted 'simply because the transferee court is more convenient for defendants.'"); *CNH Am. LLC v. Kinzenbaw*, 2009 WL 3737653, at *2 (D. Del. Nov. 9, 2009) ("While a defendant's preferred venue is a factor that the court considers, it is not sufficient to displace the plaintiff's own choice of venue.").  "Under Third Circuit law, Defendants' preference for an alternate forum is not given the same weight as Plaintiff's preference."  *Intellectual Ventures*, 842 F. Supp. 2d at 755.

### 3.     The Alleged Wrongful Activity Occurs Across The United States; This Factor Is Neutral

Patent claims under 35 U.S.C. § 271 arise when a person "makes, uses, offers to sell, or sells any patented invention", within the United States.  *See* 35 U.S.C. § 271(a).  "[A]s a matter of law, a claim for patent infringement arises wherever someone has committed acts of infringement, to wit, 'makes, uses, offers to sell, or sells any patented invention' without authority."  *Cellectis S.A. v. Precision Biosciences, Inc.,* 858 F. Supp. 2d 376, 381 (D. Del. 2012) (quoting 35 U.S.C. § 271(a)).  Nintendo does not refute that the accused products are ultimately sold in Delaware.  D.I. 9, Answer, filed 8/29/2013, ¶ 7.  The products incorporating the technology at issue are sold throughout the United States.  *Id.* ¶ 6.  The national scope of the infringing activity makes this factor neutral.  *See Personalized User Model LLP v. Google, Inc.*, 2009 WL 3460767, at *2 (D. Del. Oct. 27, 2009).

---

of forum.  662 F.3d 1221, 1223 (Fed. Cir. 2011).  In contrast to this case, the plaintiff had a substantial connection to the transferee district (i.e., its affiliate and employees including the inventors were located there).  By contrast, Ithaca has no connection to Washington.  In *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010), also relied upon by Nintendo, the plaintiff transferred documents in anticipation of litigation to the District where it filed suit.  Defendants have made no such allegations here.

Although in an infringement action, courts may find an action arose where the infringing products are designed and manufactured, that principle has no application here since the Wii Balance board was designed and manufactured in Japan.  Nintendo's argument that the infringement takes place in Washington because *marketing* is "handled out" of Washington and California has no legal or rationale support.  Therefore, this factor is neutral.

### 4.    The Convenience of the Parties Is Not Served By Transfer

The court next looks to "the convenience of the parties as indicated by their relative physical and financial condition."  *Jumara*, 55 F.3d at 879.  Considerations relevant to this inquiry include:  "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal."  *Mitek Sys., Inc. v. United Servs. Auto Ass'n*, 2012 WL 3777423, at *6 (D. Del. Aug. 30, 2012) (quoting *Fuisz Pharma v. Theranos, Inc.*, 2012 WL 1820642, at *12 (D. Del. May 18, 2012)).

Delaware is a more convenient forum for Ithaca.  Although Ithaca Development's principal place of business is in Dallas, Texas, its witnesses will include the two inventors, Maximillian Klein and Peter Lutz, both of whom live and work in Munich, Germany.  Lutz Decl. ¶ 2.  There are no non-stop flights available between Munich and Seattle.  Zeldin Decl. ¶ 3.  However, there are non-stop flights from Munich to Philadelphia, which is approximately 22 miles from this Court.  Zeldin Decl. ¶¶ 3-4.[3]

To overcome Ithaca's choice of forum and the convenience to it, Nintendo must demonstrate some specific financial or physical constraints that would make travel to Delaware

---

[3] Moreover, Delaware is closer to Dallas than Seattle.  Zeldin Decl. ¶ 5.

unfeasible. *Gielata v. Heckmann*, 2010 WL 3940815, at *3 (D. Del. Oct. 6, 2010) ("It is a defendant's responsibility to prove that litigating in the plaintiff's forum 'would pose a unique or unusual burden on its operations'; mere inconvenience to a defendant is insufficient to warrant transfer.") (footnote and citations omitted)  Nintendo purports to identify four "likely" NOA witnesses who are located in Washington:  Jacqualee Story, Rod Teuber, Steve Rain, and JC Rodrigo.  These witnesses appear to have no technical knowledge of the Wii board and an examination of their areas of knowledge and expertise, as presented by Nintendo, suggests that their testimony may not be relevant and certainly will not be central to the litigation.  Singh Decl. ¶ 8.  Ms. Story has knowledge about "Nintendo's background" and corporate history; Mr. Teuber has knowledge of Nintendo's "financial reporting" and its compliance with generally accepted accounting principles – neither of which are of central importance to this case; Mr. Rabin has knowledge of third-party software, which is also not of central importance in this litigation; Mr. Rodrigo is "adept at playing games on the Wii system using the Wii Balance Board" – it is difficult to understand why his testimony would be relevant.  Singh Decl. ¶ 8.  Indeed, none of Nintendo's self-serving selection of witnesses appears to have anything more than a tangential connection to the central infringement issues in this case.

Nintendo also argues that it would be more convenient for the two NCL potential witnesses to fly from Tokyo to Seattle for trial than from Tokyo to Philadelphia, because there are direct flights to Seattle but not to Philadelphia.  Nintendo fails to consider, as it must, that its financial resources outweigh those of the Ithaca Plaintiffs.  Zeldin Decl. ¶ 2, Ex. A; Lutz Decl. ¶ 2.  Certainly, the convenience of the two Ithaca witnesses outweighs Nintendo's when financial resources are considered as part of the equation.

Regardless, Nintendo's argument that it may be inconvenienced if the case goes to trial is routinely rejected by courts in this District.  *See ING Bank, FSB. v. Palmer*, 2010 WL 3907825, at *1 & n. 1 (D. Del. Sep. 29, 2010) ("ARC argues that, if the case goes to trial, it would face a significant burden because nearly half of the appraisal department staff would be forced to attend as witnesses.  In addition, the independent witnesses are located in Washington and, therefore, outside of the subpoena power of the court.  Given that less than 20% of all cases go to trial, and that witnesses can be deposed where they work, this argument is unpersuasive at this time") (citations omitted); *Brinkmeier v. Exergen Corp.*, 2011 WL 8948, at *3 (D. Del. Jan 3, 2011) ("Given electronic discovery, electronic means for recording depositions, and the fact that trials go forward in less than 20% of all cases, Exergen's arguments related to convenience are not compelling.").

Because Delaware is demonstrably more convenient for Ithaca, this factor is neutral.  *See Pfizer Inc. v. Sandoz Inc.*, 2010 WL 256548, at *4 (D. Del. Jan. 20, 2010) ("Because Pfizer Inc.'s offices are in New York though, Delaware is undoubtedly more convenient for Plaintiffs than Colorado.  In contrast, Defendant is a Colorado corporation, with its largest manufacturing facility located in Colorado.  It is not registered to do business in Delaware, and apparently has no physical presence in Delaware.  Colorado is undoubtedly more convenient for Defendant than Delaware.  Accordingly, the convenience of the parties is neutral.").

### 5.    The Convenience Of The Witnesses Does Not Favor Transfer

Nintendo argues that the convenience of the "witness*es*" favor transfer.  In fact, there is **only one** witness who Nintendo alleges would be arguably inconvenienced if the case remains venued in Delaware.  The witness, Sandy Hatcher, is a former Nintendo employee.  Ithaca wrote to Ms. Hatcher (along with a NCL employee Shunichi Kobayashi) in May of 1999 advising her

about its technology and informing her that a patent application had been filed.  Complaint

("Compl.") ¶ 16.  Nintendo has failed to demonstrate either that Ms. Hatcher's testimony is

important to Nintendo's case or that as a former employee she will not cooperate with Nintendo

and appear at trial.

Ms. Hatcher received Ithaca's letter and therefore Nintendo had notice of the product and

the patent application in 1999.  Compl. ¶ 16.  Arguably, her testimony may be important

therefore for Plaintiffs' case.  However, the sole contact with Mrs. Hatcher is the letter Ithaca

sent, Mrs. Hatcher's brief reply, and a subsequent brief telephone conversation.  Lutz Decl. ¶ 6.

Therefore, the content of the communication can be established by the letter itself, without

necessity of testimony.[4]  Nintendo does not offer an explanation of why Ms. Hatcher's testimony

will be necessary for its case.

Moreover, there is no evidence that Ms. Hatcher would or could not travel to Delaware

for trial, if Nintendo believed it was necessary.  This factor is only given weight when there is

some reason to believe that a witness actually will refuse to testify at trial absent a subpoena.

*See AIP Acquisition* 2012 WL 5199118, at *5 & n.6.  "If this case turns out to be one of the

statistically rare cases to go to trial, it is always possible, if not likely, that third-party fact

witnesses with material, non-cumulative evidence will voluntarily appear at trial."  *Intellectual

Ventures*, 842 F. Supp. 2d at 758.

Moreover, this Court has noted that the practical impact of this factor is limited, in light

of the fact that so few civil cases today proceed to trial and in those that do, many of the

witnesses do not appear live for trial.  *Cellectis,* 2012 WL 1556489, at *6 & n. 6; *Intellectual

---

[4] Further, the nature of the contact can be established through the other recipient of an identical
letter – NCL employee Shunichi Kobayshi -- who Nintendo does not mention in its motion to
transfer, presumably because he or she is still employed by NCL.  Compl. ¶ 16.

*Ventures*, 842 F. Supp. 2d at 757-58 (noting that for the twelve-month period ending June 30, 2010 only 1.1% of federal civil cases had a trial).  "If such witnesses will not appear at trial, their testimony can always be compelled through a deposition, by service of a notice of deposition and enforcement of such by a court with jurisdiction over the witness at issue.  While deposition testimony is not a complete substitute for live testimony, [citation], it is a fallback that in almost all instances will prevent a miscarriage of justice." *Intellectual Ventures*, 842 F. Supp. 2d at 758.

Finally, because Nintendo identifies only one third-party witness, the Court should regard this factor as neutral in the transfer analysis. *See Joao Control & Monitoring Systems*, 2013 WL 4496644, at * 8 ("because Ford identifies only one third-party witness, the court regards this [convenience of the witness] factor as neutral in the transfer analysis.")

In sum, the convenience of the witness factor is neutral.

### 6.   The Location of Books And Records Does Not Favor Transfer

Although Nintendo argues that the location of books and records favors transfer because the "majority" of the "corporate documents" are kept in Washington, an examination of Nintendo's evidence reveals that the majority of the technical documents relating to the Wii Board are located in Japan.  Singh Decl. ¶ 6.[5]  By "corporate" documents, Nintendo apparently means that sales and marketing materials are maintained in Washington.  *Id*.  However, not all of those documents are kept in Washington.  Nintendo's Senior Vice-President of Marketing is based in Redwood City, California and implementation of marketing plans is handled out of Redwood City.  Nintendo fails to supply evidence regarding the quantity of relevant documents that are located in California versus Washington versus Japan.  In sum, documents relating to

---

[5] Nintendo supplies no evidence with respect to NCL's documents – just NOA's documents. NCL's documents are logically maintained in Japan.

liability, which is the crux of this case are located in Japan; and documents relating to damages are located in Japan, California and Washington.  Therefore, the majority of the documents relevant to this case are not located in Washington and this factor does not favor transfer.[6]

**B.      The Public Interest Factors Favor Adjudication In This Court**

**1.      Practical Considerations Do Not Favor Transfer**

The court first looks to "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879.  Nintendo argues this factor favors transfer, repeating several of the arguments it employed in the "party convenience" private interest section.  The "practical considerations" factor, however, is a *public* interest factor and demands that at attention is given to the public costs of litigation.  *See AIP Acquisition*, 2012 WL 5199118, at *5.  Nintendo's reliance upon the Federal Circuit's decision *In re Nintendo, Ltd.,* 589 F.3d 1194, 1199 (Fed. Cir. 2009) is misplaced.  In the portion of *In re Nintendo*, 489 F.3d at 1199, relied upon by Nintendo, the Federal Circuit, applied the Fifth Circuit factor and law (rather than the Third Circuit law) for convenience and cost of attendance for witnesses – which is not a public factor, but a private factor.  Further, the language Nintendo quotes comes from the Fifth Circuit's "100-mile" guideline, which has not been adopted by the Third Circuit.[7]

---

[6] Even when the critical documents in a case are located in the alternative forum, because of advances in technology, this factor is generally given very little weight.  *See 1st Source Bank*, 2011 WL 30767, at *5 ("[T]he location of documents and witnesses in Florida is not reason enough to transfer the case to Florida because, as this court has previously noted: [T]echnological advances have substantially reduced the burden of having to litigate in a distant forum . . . These technologies have shortened the time it takes to transfer information, reduced the bulk or size of documents or things on which information is recorded and can be transferred and have lowered the cost of moving that information from one place to another").

[7] "The Federal Circuit's numerous transfer cases arising from the Fifth Circuit are not controlling as the Federal Circuit interprets the law of the Circuit in which the District Court sits.  *See In re Link_A_Media*, 662 F.3d at 1223.  The law of the two Circuits in regard to how to conduct a (footnote continued)

14

### 2.    The "Court Congestion" Factor Does Not Favor Transfer

Nintendo argues that the Western District of Washington is less congested than the District of Delaware, relying upon data from Federal Court Management Statistics.  However, the Federal Court Management Statistics data shows that the difference in median time to disposition between the two jurisdictions was marginal.  Over the last three years the Western District of Washington's median time to disposition ranged from 6.2 to 6.9 months, whereas the District of Delaware's median time to disposition ranged from 8 to 9 months.  Horwitz Decl. Exs. 3 and 4.  Notably, the District of Delaware is more efficient than the Western District of Washington in its handling patent cases.  The median time to trial in patent cases in the District of Delaware was 2.03 years, whereas the median time to trial in Washington was 2.19 years. Lemley, Mark A., *Where to File Your Patent Case*, 38 AIPLA Q.J. 401, 418 (2010).

In any event, this Court also has repeatedly found that any disparity in court congestion between Delaware and other district courts is not so great as to weigh in favor of a transfer.  *See, e.g., Intellectual Ventures*, 842 F. Supp. at 759-60 ("Particularly given that this Court—for the first time in nearly five years—no longer has a judicial vacancy, the Court is not persuaded that administrative difficulties due to court congestion favor transfer"); *Human Genome Sci, Inc. v. Genentech,* 2011 WL 2911797, at *10 (D. Del. July 18, 2011)  ("Notwithstanding the heavy caseload carried by the judges in this District, and the ongoing judicial vacancy, the Court is not persuaded that administrative difficulties due to court congestion favor transfer"); *Textron Innovations, Inc. v. The Toro Co.*, 2005 WL 2620196, at *3 (D. Del. Oct. 14, 2005) ("[T]he court

---

transfer analysis is different in a number of regards.  Of greatest relevance, 'Fifth Circuit precedent clearly forbids treating the plaintiff's choice of venue as a distinct factor in the [transfer] analysis.'  *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008).  As noted earlier, the Third Circuit treats the plaintiff's choice as a factor of 'paramount importance.'" *Secmcon Tech*, 2013 WL 126421, at *4 & n.6  (D. Del. January 8, 2013).

is not persuaded that any disparity in court congestion, to the extent there is any, will be so great as to weigh strongly in favor of transfer.").  Thus, this factor does not favor transfer.

### 3.     Washington Does Not Have A Strong Local Interest In This Patent Suit

The court also balances "the local interest in deciding local controversies at home." *Jumara*, 55 F.3d at 879.  An infringement action, however, is not properly characterized as a "local controversy" simply because the litigation presents a matter of local interest in a defendant's home state.  *See Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 733-34 (D. Del. 2012).  As this Court previously stated:

> [P]atent litigation does not constitute a local controversy in most cases.  Patent cases implicate constitutionally protected property rights.  The resolution of patent cases is governed by federal law reviewed by a court of appeals of national (as opposed to regional) stature.  Moreover, to characterize patent litigation as "local" undermines the appearance of neutrality that federal courts were established to provide and flies in the face of the national (if not global) markets that are affected by the outcome of these cases.

*Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 367, 375 (D. Del. 2012).  Given that Nintendo is a multinational company and the product is sold and used nationwide, this patent infringement action is more properly described as a national controversy.  *See Smart Audio Techs.*, 910 F. Supp. 2d at 734 ("This is a lawsuit governed by federal law, brought against a multinational corporation, and concerning a product that is sold and used nationwide.  It is truly a national controversy. . . .).  Thus, this factor does not favor transfer.

### 4.     Public Policy Does Not Favor Transfer

Although not addressed by Nintendo, this factor disfavors transfer.  As this Court has previously stated, "'[t]he public policy of Delaware encourages the use by Delaware corporations as a forum for resolution of business disputes.'"  *Intellectual Ventures*, 842 F. Supp.

2d at 760 (quoting, *Wacoh Co. v. Kionix Inc.*, 845 F. Supp.2d 597, 604 (D. Del. 2012)).

Transferring this action out of Delaware would be inconsistent with this policy.

**VI.   <u>CONCLUSION</u>**

Overall, Plaintiffs' choice of forum and public policy weigh against transfer, whereas only one factor, the Defendants' choice of forum weights in favor of transfer.  As all other factors are neutral, Nintendo has failed to satisfy its heavy burden of showing that the balance of convenience factors and interests of justice weigh strongly in favor of transfer, and accordingly the Court should deny Nintendo's motion to transfer.

Dated: September 30, 2013            By:   */s/ Kenneth L. Dorsney*
                                        Kenneth L. Dorsney (#3726)
                                        MORRIS JAMES LLP
                                        500 Delaware Avenue, Suite 1500
                                        Wilmington, DE 19801-1494
                                        (302) 888-6800
                                        kdorsney@morrisjames.com

                                        Attorneys for Plaintiffs
                                        ITHACA VENTURES k.s. and ITHACA
                                        DEVELOPMENT, LLC

*Of Counsel:*

Randall J. Sunshine
Ted S. Ward
Kim Zeldin
Edward A. Klein
LINER GRODE STEIN YANKELEVITZ
SUNSHINE REGENSTREIF & TAYLOR LLP
1100 Glendon Avenue, 14th Floor
Los Angeles, California 90024.3503
(310) 500-3503
rsunshine@linerlaw.com
tward@linerlaw.com
eklein@linerlaw.com
kzeldin@linerlaw.com