# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ITHACA VENTURES k.s. and ITHACA DEVELOPMENT, LLC, | |
| Plaintiffs, | C.A. No. 13-824-GMS |
| v. | |
| NINTENDO OF AMERICA INC. and NINTENDO CO., LTD., | |
| Defendants. | |

## ITHACA VENTURES K.S.'S AND ITHACA DEVELOPMENT, LLC'S OPPOSITION TO NINTENDO'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11

Kenneth L. Dorsney (#3726)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801-1464
(302) 888-6800
kdorsney@morrisjames.com

*Pro Hac Vice:*

Randall J. Sunshine
Ted S. Ward
Kim Zeldin
Edward A. Klein
LINER GRODE STEIN YANKELEVITZ
SUNSHINE REGENSTREIF & TAYLOR
1100 Glendon Avenue, 14th Floor
Los Angeles, CA 90024-3503
(310) 500-3500
rsunshine@linerlaw.com
tward@linerlaw.com
kzeldin@linerlaw.com
eklein@linerlaw.com

*Attorneys for Plaintiffs Ithaca Ventures k.s. and Ithaca Development, LLC*

Dated: October 7, 2013

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................1

II.    STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS .........................2

III.   SUMMARY OF THE ARGUMENT ...............................................................3

IV.   STATEMENT OF FACTS ............................................................................3

      A.      The invention of the '802 Patent and Ithaca's attempts to license Nintendo...........3

      B.      Ithaca's pre-filing investigation of the Wii Balance Board ....................4

      C.      Ithaca's pre-filing investigation of infringement ...................................4

      D.      Nintendo's shifting claim construction positions ...................................5

V.     ARGUMENT ..........................................................................................6

      A.      Nintendo's Rule 11 motion should be denied in view of its counterclaims asserting that an "actual and justiciable controversy exists" regarding infringement and validity ..................................................................6

      B.      Nintendo's Rule 11 motion should be denied as an improper attempt to circumvent claim construction, discovery and summary judgment......................7

           1.      Nintendo may not circumvent claim construction by insinuating its new constructions into this case as "fact"...................................7

           2.      Nintendo cannot circumvent summary judgment and discovery................8

      C.      Ithaca complied with Rule 11 before filing this lawsuit and at all times thereafter ............................................................................................9

           1.      Ithaca conducted an objectively reasonable investigation of the accused product and its infringement of the '802 Patent............................9

           2.      The facts in Nintendo's purported authority bear no resemblance to Ithaca's pre-filing investigation ................................................11

      D.      Ithaca's infringement allegations are reasonable under Nintendo's own constructions ...................................................................................12

           1.      It is reasonable to allege infringement under Nintendo's "plain and ordinary meaning" construction of "tilt" .......................................13

           2.      It is reasonable to allege infringement under Nintendo's July 2013 construction of "tilt" ...............................................................13

           3.      It is reasonable to allege infringement under Nintendo's July 2013 construction of "move parallel" ..................................................14

      E.      Nintendo's Rule 11 motion is an attempt to insinuate its improper constructions into this case ...............................................................14

i

1.      There is no basis to limit "tilt" to a slope that is "perceptible to the user" ......................................................................................................15

2.      There is no basis to limit "move parallel" to require "perceptible movement" of the support surface ...........................................................18

VI.     CONCLUSION...........................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

Cases

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).................................................................................. 8

*Computer Docking Station Corp. v. Dell, Inc.*,
    519 F.3d 1366 (Fed. Cir. 2008) .............................................................. 17

*Dura Systems, Inc. v. Rothbury Invest., Ltd.*,
    886 F.2d 551 (3d Cir. 1989) .................................................................... 10

*Elan Pharma International Ltd. v. Abraxis Bioscience, Inc.*,
    C.A. No. 06-438 GMS, Dkt. No. 345 (D. Del. 2007)............................... 6

*Elbex Video, Lts. V. Sensormatic Elecs. Corp.*,
    508 F.3d 1366 (Fed. Cir. 2007) .............................................................. 13

*Eon-Net LP v. Flagstar Bancorp*,
    653 F.3d 1314 (Fed. Cir. 2011) .......................................................... 7, 12

*Forbes v. Eagleson*,
    228 F.3d 471 (3d Cir. 2000) .................................................................... 10

*GN Resound A/S v. Callpod, Inc.*,
    2013 U.S. Dist. LEXIS 142822 (N.D. Cal. Sept. 27, 2013) ..................... 8

*Judin v. United States*,
    110 F.3d 780 (Fed. Cir. 1997) ................................................................ 11

*Lieb v. Topstone Inds.*,
    788 F.2d 151 (3d Cir. 1986) .................................................................... 10

*Markman v. Westview Instruments*,
    517 U.S. 370 (1996).................................................................................. 7

*On Time Aviation, Inc. v. Bombardier Capital Inc.*,
    570 F. Supp. 2d 328 (D. Conn. 2008)..................................................... 12

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ........................................................ 15, 17

*Q-Pharma, Inc. v. The Andrews Jergens Co.*,
    360 F.3d 1295 (Fed. Cir. 2004) ........................................................ 10, 12

*Raylon, LLC v. Complus Data Innovations, Inc.*,
    700 F.3d 1361 (Fed. Cir. 2012) ...................................................................... 8, 11, 12

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*,
    208 F.3d 981 (Fed. Cir 2000) ............................................................................ 8, 11


**Rules**

Fed. R. Civ. P. 11 .......................................................................................................... 2

Fed. R. Civ. P. 11 Advisory Comm. Notes (1993 Amendments).................................... 9

Fed. R. Civ. P. 11(b) ..................................................................................................... 9

Fed. R. Civ. P. 56(c) ..................................................................................................... 8

## I.      INTRODUCTION

Defendant Nintendo's[1] motion for Rule 11 sanctions (the "Motion") is meritless and should be denied.  Nintendo asks this Court effectively to hold that Nintendo prevails on the merits and that Ithaca's pre-suit investigation was inadequate.  As a threshold issue, the Motion raises significant issues about the operation of the accused products and claim construction. Nintendo offers no justification or authority for having these issues resolved at this early juncture, prior to any discovery or claim construction proceedings.

There is similarly no basis to find that Ithaca or its counsel failed to satisfy their Rule 11 obligations, and indeed Nintendo's own counterclaims alleging that an "actual and justiciable controversy exists" belie its assertions.  Ithaca's pre-filing investigation exceeded its obligations under Rule 11.  The named inventors of asserted U.S. Patent No. 6,624,802 (the "'802 Patent") purchased, tested, and analyzed the accused Wii Balance Board, including analyzing its tilt and parallel movement.  This analysis was carefully reviewed by Ithaca's counsel, Ted S. Ward, who has over 20 years of patent counseling and litigation experience.  Mr. Ward conducted an extensive analysis of the '802 Patent, including the claims, specification and prosecution history, as well as the accused product before filing of this action.  Based on this analysis, Ithaca and its counsel reasonably believed pre-filing, and continue to believe today, that the accused Wii Balance Board meets the "tilt" and "move parallel" elements of the asserted claims.  For example, the Wii Balance Board employs spring-elastic elements (or "load cells") that bend under the user's weight, causing tilt and parallel movement.

---

[1] Unless otherwise indicated, Nintendo of America, Inc. and Nintendo Co., Ltd. are collectively referred to as "Nintendo" or "Defendants," and Ithaca Ventures k.s. and Ithaca Development, LLC are collectively referred to as "Ithaca."

Despite that no claim construction proceedings or discovery have taken place, Nintendo asserts that the accused product does not infringe under its own proposed constructions, which require movement to be "perceptible to the user."  However, nothing in the claims, specification, file history, or any other evidence supports Nintendo's constructions.  Indeed, Nintendo has previously advanced broader constructions for these terms, which demonstrate that Ithaca's infringement allegations are reasonable, and cannot be frivolous.

## II.    STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS

After a thorough pre-filing investigation, Ithaca filed the Complaint in this action alleging that Nintendo's Wii Balance Board infringes the '802 Patent.  (Dkt. No. 1.)  Nintendo then raised purported Rule 11 concerns in a letter to Ithaca's counsel, asserting that the Wii Balance Board "cannot satisfy the 'tilt' and 'rotation' or 'parallel movement' limitations," and advancing specific constructions for those terms (which it now changes).  (Declaration of Richard L. Horwitz in Support of Nintendo's Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 ("Horwitz Decl."), Ex. 3 at 5-9.)  Ithaca's counsel responded on August 1, explaining that its allegations are well-founded and that the Wii Balance Board satisfies the "tilt" and "parallel movement" limitations.  (Horwitz Decl., Ex. 6.)  Ithaca's response letter describes the testing conducted at the direction of counsel that demonstrates "tilt" and "parallel movement." (*Id.*)

After receiving Ithaca's letter describing its pre-filing investigation, Nintendo filed an Answer and Counterclaims alleging that:  "Based on the Complaint for patent infringement filed by Plaintiffs, an actual and justiciable controversy exists between Nintendo and Plaintiffs regarding the non-infringement and invalidity of the patents-in-suit."  (Dkt. No. 9 at 8.)  Thereafter, Nintendo filed its Rule 11 motion, raising claim construction and summary judgment arguments even though the Court has not entered its Scheduling Order or held its *Markman* hearing construing the claims.  Indeed, the parties have not yet engaged in any formal discovery.

### III.     SUMMARY OF THE ARGUMENT

(1) Nintendo's Rule 11 motion should be denied in view of its counterclaims asserting that an "actual and justiciable controversy exists" regarding infringement and validity.  Through the Motion, Nintendo improperly attempts to circumvent claim construction and discovery, and seek early and unwarranted summary judgment.

(2) Ithaca complied with Rule 11 before filing this lawsuit and at all times thereafter. Ithaca and its counsel conducted an objectively reasonable investigation of the accused product and infringement, including a thorough analysis of the accused product in view of the claims, specification and file history.  Ithaca's investigation was more than reasonable; the cases cited by Nintendo bear no similarity to Ithaca's investigation.

(3) Nintendo's own claim construction positions demonstrate that Ithaca's allegations of infringement are reasonable.  Nintendo's Rule 11 motion is an attempt to insinuate its new constructions into this case as "fact," whereas Nintendo's claim constructions are improper and lack any support in the law or evidence.

### IV.     STATEMENT OF FACTS

#### A.     The invention of the '802 Patent and Ithaca's attempts to license Nintendo

On or around 1997, inventors Maximilian Klein and Peter Lutz invented a method and device for detecting specific states of movement of a user.  (Complaint, Dkt. No. 1 at 4.)  Messrs. Klein and Lutz subsequently filed patent applications for their invention, including the application that would issue as the '802 Patent.  In 1999, Mr. Lutz contacted Nintendo and presented the technology, the patent application, and an opportunity to license the technology. (Declaration of Peter Lutz ("Lutz Decl.), ¶ 2.)  Nintendo of America responded that its personnel reviewed the proposal but "at the present time are not interested in licensing this product." (*Id.*, ¶ 3.)  Likewise, Nintendo of Japan indicated that its technical staff had considered the proposal,

but had "no future plan" on developing new merchandise using the device.  (*Id.*, ¶ 3.)  Despite

refusing to enter into an appropriate license, Nintendo released the Wii Balance Board using the

patented technology.

> **B.**     **Ithaca's pre-filing investigation of the Wii Balance Board**

When Nintendo released the Wii Balance Board, Messrs. Lutz and Klein acquired the

product (S/N BC384771641), and reverse engineered and tested it to demonstrate, among other

things, that it included a support surface that could "tilt" and "move parallel" according to the

'802 Patent claims.  (*Id.*, ¶ 5.)  They examined the mechanical structure of the Wii Balance

Board and determined that it included spring-elastic elements.  (*Id.*, ¶¶ 6-8.)  They set up the Wii

Balance Board and measured the tilt and parallel movement using dial indicators placed on

stands at four measuring points.  (*Id.*, ¶ 9.)  With this set up, they were able to measure changes

in height at the four measuring points when different weights are applied.  (*Id.*)  The results

showed that the height of the measuring plate is reduced at the same time at all four measuring

points, and is reduced more when more weight is applied.  (*Id.*, ¶ 10.)  These results confirmed

that the support surface moves parallel to a vertical axis.  (*Id.*)  The results also showed that the

measuring points lie in an approximately horizontal plane when the weight is centered, and lie in

another plane that intersects this horizontal plane in a definable degree, i.e. a tilting angle, when

the distribution of weight changes.  (*Id.*, ¶ 11.)  These results confirmed that the support surface

both moves parallel and tilts.  (*Id.*)

> **C.**     **Ithaca's pre-filing investigation of infringement**

Prior to filing the Complaint, counsel for Ithaca conducted an extensive pre-suit

investigation.  This investigation was spearheaded by Ted Ward, a partner at Liner Grode Stein

Yankelvitz Sunshine Regenstreif + Taylor LLP ("Liner Grode"), who has practiced patent law

for over twenty years, including in the areas of electronics, mechanical devices, and consumer

products, and who has never been sanctioned by any court.[2]  (Ward Decl., ¶ 2.)  During his investigation, Mr. Ward reviewed publicly available materials concerning the Wii Balance Board product, including the Wii Balance Board product documentation, obtained and examined a Wii Balance Board, and carefully studied the analysis and results of testing on the Wii Balance Board conducted by Messrs. Lutz and Klein.  (Ward Decl., ¶ 3.)  Mr. Ward also conducted a thorough review of the '802 Patent, the corresponding file history and relevant prior art, and performed claim construction and infringement analyses of the '802 Patent, including comparison of the claims with the accused Wii Balance Board product.  He discussed this analysis with the other Ithaca counsel of record.  (Ward Decl., ¶ 4.)  Having determined that Nintendo infringed the '802 Patent, Ithaca filed its Complaint.

### D.      Nintendo's shifting claim construction positions

Nintendo has advanced various claim constructions in the course of pursuing its Rule 11 allegations.  Initially, Nintendo maintained that "tilt" requires "a support surface that can be angularly displaced or sloped," and that "move parallel" requires a support surface that can "move as a whole straight upward or downward, parallel to such axis."  (Horwitz Decl., Ex. 3 at 5-6.)  Nintendo has argued, and maintains in its Motion, that "tilt" should be given the "plain and ordinary meaning" of "the state of being tilted; a sloping position."  (*Id*. at 4; Motion at 6.)  In its Motion, Nintendo now narrows its prior claim constructions and contends that the claims require motion to be "perceptible to the user." (Motion at 6 and 11.)

---

[2] Prior to joining Liner Grode, Mr. Ward was managing partner of his own firm, Of Counsel at Irell & Manella LLP, and an associate at White & Case LLP.  (Ward Decl., ¶ 2.)

## V.      ARGUMENT

Nintendo's strained attempt to argue for a Rule 11 violation fails.  Ithaca's pre-filing investigation was more than adequate, and it is reasonable to assert that the Wii Balance Board infringes under even Nintendo's own claim constructions.

### A.      Nintendo's Rule 11 motion should be denied in view of its counterclaims asserting that an "actual and justiciable controversy exists" regarding infringement and validity

A Rule 11 motion should be denied when a defendant asserts counterclaims alleging that a justiciable controversy exists with respect to infringement and validity.  *See Elan Pharma International Ltd. v. Abraxis Bioscience*, *Inc.*, C.A. No. 06-438 GMS, Dkt. No. 345 (D. Del. 2007) (attached as Ward Decl., Ex. 1).  In *Elan*, this Court denied the defendant's Rule 11 motion on the basis of counterclaims asserting that "a justiciable controversy has arisen and exists … concerning the validity and scope of the [asserted patents] and [defendant's] liability for alleged infringement thereof."  (*Id*.)  Nintendo also asserts such counterclaims, alleging that: "Based on the Complaint for patent infringement filed by Plaintiffs, an actual and justiciable controversy exists between Nintendo and Plaintiffs regarding the non-infringement and invalidity of the patents-in-suit." (Answer and Counterclaims, Dkt. No. 9 at 8.)  Nintendo's counterclaims "belie its assertion that [Ithaca] did not sufficiently investigate the substantive basis for its claims and that the plaintiff filed its complaint for an improper purpose."  *Elan Pharma*, C.A. No. 06-438, Dkt. No. 345 (D. Del. 2007).  Nintendo cannot argue that the "the complaint was brought in violation of Rule 11" (Motion at 19) when it admits that "[b]ased on the Complaint…. an actual and justiciable controversy exists" regarding infringement and validity (Dkt. No. 9 at 8). Accordingly, Nintendo's Rule 11 motion should be denied.

**B.      Nintendo's Rule 11 motion should be denied as an improper attempt to circumvent claim construction, discovery and summary judgment**

Nintendo seeks dismissal of Ithaca's infringement claims based on (1) its own new and improper claim constructions (though no claim construction proceedings have taken place) and (2) its own self-serving allegations regarding the operation of the accused product (though no discovery has taken place).  (*See* Motion at 19.)  Nintendo's Rule 11 motion should be denied as an improper attempt to avoid infringement by circumventing the required procedures for claim construction, discovery, and summary judgment.

**1.      Nintendo may not circumvent claim construction by insinuating its new constructions into this case as "fact"**

In its Rule 11 motion, Nintendo seeks to circumvent claim construction and insinuate its own improper constructions into the case as "fact."  The Court has not yet scheduled a *Markman* hearing and the parties have not yet engaged in any formal discovery or claim construction proceedings.  In its Motion, Nintendo presumes that the Court will accept its own claim constructions as "fact," even including several pages of claim construction *argument* in its "Statement of Facts."  (Motion at 3-11.)  However, the Court, not Nintendo, is charged with construing the claims.  *Markman v. Westview Instruments*, 517 U.S. 370, 372 (1996).  The fundamental premise of Nintendo's Rule 11 motion is that unless Ithaca agrees with Nintendo's interpretation of the claims of the '802 Patent (which are improper for the reasons discussed below), and accepts at face value its self-serving statements regarding the design and operation of the accused Wii Balance Board, Ithaca necessarily violates Rule 11.  This premise not only lacks merit, but makes a mockery of Rule 11.

Nintendo's Rule 11 motion is contrary to Federal Circuit authority holding that a full claim construction analysis is needed to assess whether a claim construction reasonable.  *See Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1318 (Fed. Cir. 2011).  In *Eon-Net*, the Federal

Circuit vacated imposition of Rule 11 sanctions prior to claim construction, and on remand instructed the district court to first engage in a full claim construction analysis, including consideration of the plaintiff's claim construction arguments. *Id*. at 1318-19. Nintendo's Rule 11 motion violates this clear precedent. Nintendo's other cited cases further demonstrate that the parties should have the opportunity to engage in discovery and claim construction proceedings prior to any Rule 11 motion that is based, as Nintendo's is, on reasonableness of claim construction and infringement allegations.[3]

### 2.     Nintendo cannot circumvent summary judgment and discovery

Nintendo seeks dismissal of Ithaca's infringement claims based also on its own self-serving statements regarding the design and operation of the accused product. Motion at 19. However, Rule 56 provides that summary judgment may be entered only after adequate opportunity for discovery. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Nintendo cannot effectively seek the same result under the guise of Rule 11 while depriving Ithaca of any opportunity for discovery. *See GN Resound A/S v. Callpod, Inc.*, 2013 U.S. Dist. LEXIS 142822, at *14-15 (N.D. Cal. Sept. 27, 2013) (declining to "dismiss this action or grant summary judgment in [the defendant's] favor in the guise of a motion for Rule 11 sanctions"). As the Advisory Committee Notes for Rule 11 explain, "Rule 11 motions . . . should not be employed . . . to test the sufficiency or efficacy of allegations in the pleadings;

---

[3] *See View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 983 (Fed. Cir 2000) (Rule 11 motion heard after the parties engaged in discovery and after the court granted the defendant's motion for summary judgment of no infringement); *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1365 (Fed. Cir. 2012) (parties engaged in claim construction proceedings before the court considered any Rule 11 motion).

other motions are available for those purposes." Fed. R. Civ. P. 11 Advisory Comm. Notes (1993 Amendments).[4] Yet, this is precisely what Nintendo's Motion seeks to do.

### C.      Ithaca complied with Rule 11 before filing this lawsuit and at all times thereafter

Ithaca complied with Rule 11 before filing this lawsuit by conducting an objectively reasonable investigation of the accused product and infringement.  Ithaca's investigation was more than adequate, and Nintendo's cases bear no similarity to Ithaca's investigation.  Moreover, Nintendo's own prior claim constructions demonstrate that Ithaca's allegations are reasonable.

### 1.      Ithaca conducted an objectively reasonable investigation of the accused product and its infringement of the '802 Patent

Ithaca has steadfastly met its Rule 11 obligations at all times.  Rule 11 requires an attorney to conduct an inquiry of the law and facts that is objectively reasonable under the circumstances before filing a pleading in court, and to certify that the claims contained therein are not frivolous, legally unreasonable, without factual foundation or asserted for an improper purpose.  *See* Fed. R. Civ. P. 11(b).  The Third Circuit advises restraint in applying Rule 11 sanctions:

> Rule 11 Sanctions may be imposed in the exceptional circumstance where the claim or motion is patently unmeritorious or frivolous.  Although the Rule imposes a duty of reasonable inquiry as to both facts and law, it is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories.  The standard is one of reasonableness under the circumstances.

---

[4] Nintendo's Rule 11 motion also violates this Court's rule that:  "No party shall be permitted to file any motion for summary judgment prior to the commencement of the 16.2(b) Scheduling Conference." *See* http://www.ded.uscourts.gov/judge/chief-judge-gregory-m-sleet, visited Sept. 19, 2013.  Nintendo effectively seeks an early and unwarranted summary judgment of non-infringement based on its own improper claim constructions, in violation of this Court's rules.

*Dura Systems, Inc. v. Rothbury Invest., Ltd.*, 886 F.2d 551, 556 (3d Cir. 1989) (internal citations omitted).  Although Rule 11 imposes a duty of reasonable inquiry as to the facts set forth in a pleading, "it is not necessary that an investigation into the facts be carried to the point of absolute certainty."  *Forbes v. Eagleson*, 228 F.3d 471, 488 (3d Cir. 2000).  Instead, the rule imposes on counsel "a duty to look before leaping and may be seen as the litigation version of the familiar railroad crossing admonition to 'stop, look and listen.'"  *Lieb v. Topstone Inds.*, 788 F.2d 151, 157 (3d Cir. 1986).  As the Federal Circuit has held, "the presence of an infringement analysis plays the key role in determining the reasonableness of the pre-filing inquiry made in a patent infringement case under Rule 11."  *Q-Pharma, Inc. v. The Andrews Jergens Co.*, 360 F.3d 1295, 1302 (Fed. Cir. 2004).

Ithaca stopped, looked and listened before asserting claims that Nintendo infringes the '802 Patent.  Ithaca acquired, reverse engineered, and tested the Wii Balance Board device, and determined that it infringes the claims of the '802 Patent, including the "tilt" and "move parallel" claim elements that Nintendo contends are not met under its latest constructions.  (Lutz Decl., ¶¶ 5-12; Ward Decl., ¶¶ 3-6.)  By reverse engineering and testing the accused product, Ithaca went above and beyond its obligations under Rule 11.  *See Q-Pharma*, 360 F.3d 1295, 1302 (holding that infringement analysis can "consist of a good faith, informed comparison of the claims of a patent against the accused subject matter," and finding no Rule 11 violation despite lack of testing or reverse engineering).  In particular, Mr. Lutz examined the mechanical structure of the device and determined that it uses spring-elastic elements, which cause the support unit to move parallel and tilt based on weight applied to the support surface.  (Lutz Decl. ¶¶ 5-6.)  He also analyzed the tilt and parallel movement of the Wii Balance Board by measuring changes in the height of the support surface when different weights were centered on the surface or shifted to

the sides.  (*Id*. at ¶¶ 7-12.)  The results of this analysis show that the support surface moves parallel to a vertical axis, and tilts.  (*Id*.)

Ithaca counsel independently studied this analysis, and also reviewed publicly available information regarding the Wii Balance Board.  (Ward Decl., ¶ 3.)  In particular, Mr. Ward conducted a thorough review of the '820 Patent, the file history, relevant prior art, and performed claim construction analyses of the '802 Patent.  (*Id*., ¶ 4.)  Most importantly, he compared the claims of the '802 Patent to the Nintendo Wii Balance Board, and determined that there was an objectively reasonable basis to contend that the Nintendo Wii Balance Board infringes the '802 Patent.  (*Id*., ¶¶ 4-6.)  Armed with an objectively reasonable basis for its contentions, Ithaca filed its Complaint on May 9, 2013.

> **2.     The facts in Nintendo's purported authority bear no resemblance to Ithaca's pre-filing investigation**

None of Nintendo's cited cases (*See* Motion at 2-3, 17) bears any resemblance to Ithaca's extensive pre-filing investigation.  In *View Eng'g*, the patent owner admitted that it had "no factual basis" for its infringement claims, it never had physical access to the accused devices, and conceded that the only basis for filing the infringement claim was the "belief" that the accused devices "probably infringed."  *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 984-85 (Fed. Cir 2000).  It performed no independent claim construction analysis, and admitted that it could not perform any infringement analysis "until [it] learned what [the defendant] actually did."  *Id.*  Similarly, in *Judin* the plaintiff and his counsel "observed an accused device from a distance while it was in use at a post office," but had not obtained the actual device.  *Judin v. United States*, 110 F.3d 780, 784 (Fed. Cir. 1997).  Moreover, "there [was] no evidence that [plaintiff] or his attorneys 'compared the accused device with the patent claims' before filing the complaint."  *Id.*  In *Raylon*, the plaintiff's claim construction was found

to be contrary to all the intrinsic evidence, and to not conform to the standard canons of claim construction. *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1369 (Fed. Cir. 2012). Likewise, in *Eon-Net LP*, the court found that the written description of the asserted patent "unequivocally compels" a construction limiting the invention to hard copy documents, since it "repeatedly and consistently" defined the invention as processing information from hard copy documents. *Eon-Net LP,* 653 F.3d 1314, 1321-23 (Fed. Cir. 2011).

In contrast to these cases, Ithaca and its counsel obtained and analyzed the Wii Balance Board device, performed independent claim construction analysis, and compared the claims of the '802 Patent to the accused device. This is more than adequate to meet Ithaca's Rule 11 obligations. *See Q-Pharma*, 360 F.3d at 1302. Moreover, as described below, it is *Nintendo's* claim constructions that are unreasonable and not supported by the evidence. Thus, there is simply no similarity between the cases cited by Nintendo in support of its Rule 11 motion and Ithaca's reasonable pre-filing investigation.

### D.   Ithaca's infringement allegations are reasonable under Nintendo's own constructions

As Ithaca has never made any representations to the Court regarding claim construction, Nintendo's Rule 11 motion is premised on the Court accepting Nintendo's latest constructions requiring movement to be "perceptible to the user."[5] However, Nintendo's earlier constructions and its "plain and ordinary meaning" construction – none of which require this limitation – demonstrate that Ithaca's allegations of infringement are reasonable. By now narrowing its

---

[5] Nintendo's Rule 11 Motion must be dismissed for the additional reason that it is based on assertions in a *letter* from Ithaca counsel to Nintendo counsel. *See* Motion at 17 and 18, *citing* Horwitz Decl, Ex. 6. There can be no violation of Rule 11, where sanctions are restricted to "representations to the Court (and not letters between counsel)." *On Time Aviation, Inc. v. Bombardier Capital Inc.*, 570 F. Supp. 2d 328 (D. Conn. 2008).

constructions, Nintendo implicitly acknowledges what the evidence shows -- that it is reasonable to allege that the Wii Balance Board "tilts" and "moves parallel" under "plain and ordinary meaning" and under Nintendo's own prior constructions.

> **1.      It is reasonable to allege infringement under Nintendo's "plain and ordinary meaning" construction of "tilt"**

"Claim terms are entitled to a 'heavy presumption' that they carry their ordinary and customary meaning to those skilled in the art."  *Elbex Video, Lts. v. Sensormatic Elecs. Corp.*, 508 F.3d 1366, 1371 (Fed. Cir. 2007).  In this regard, Nintendo argues both in its earlier letter and in its Rule 11 motion that the inventors did not give "tilt" a special meaning in the specification of the '802 Patent, so it should be construed as having a plain and ordinary meaning of "the state of being tilted; a sloping position."  (Horwitz Decl., Ex. 3 at 4; Motion at 6 (emphasis added).)

Nintendo never contends that the Wii Balance Board does not "tilt" under plain and ordinary meaning.  Indeed, Nintendo's declarant himself admits that the Wii Balance Board uses strain gauges to measure the "bending" of the load cells to generate electrical signals corresponding to the weight placed on the device.  (Horwitz Decl., Ex. 10 at 5.)  It is reasonable to allege that bending results in "tilt" under this construction, when, for example, a load is placed on the left side of the surface and the load cells on that side "bend" with a corresponding state of being tilted, and "sloping position" to the left (similar effects will also occur with the right, front and back sides of the surface).  This is consistent with Ithaca's pre-filing investigation, which determined that the "tilt" limitation was met. (*See* Section V.C.1.)

> **2.      It is reasonable to allege infringement under Nintendo's July 2013 construction of "tilt"**

In its letter, Nintendo argues that the "tilt" limitation requires "at a minimum, a support surface that can be angularly displaced or sloped."  (Horwitz Decl., Ex. 3 at 5.)  In support of this

construction, Nintendo references statements made by the applicants during prosecution that a prior art device was "merely angularly displaceably (i.e. tiltably) mounted to the base platform." (*Id.*)

It is reasonable to allege that the Wii Balance Board infringes under this construction, for the same reasons discussed above with respect to Nintendo's "plain and ordinary meaning" construction:  because bending of the load cells causes the support surface to be "angularly displaced or sloped."  This is likewise consistent with Ithaca's pre-filing investigation, which determined that the "tilt" limitation was met. (*See* Section V.C.1.)

### 3.      It is reasonable to allege infringement under Nintendo's July 2013 construction of "move parallel"

In its letter, Nintendo also argued that the "parallel movement" limitation "requires, at a minimum, a support surface that can either turn around an axis or move as a whole straight upward or downward, parallel to such axis."  (Horwitz Decl., Ex. 3 at 6 (emphasis added)).  It is reasonable to allege that the Wii Balance Board infringes under this construction, as evidenced by Mr. Yamazaki's admission that the Wii Balance Board uses strain gauges to measure the "bending" of the load cells to generate electrical signals corresponding to the weight placed on the device.  (Horwitz Decl., Ex. 10 at 5.)  It is reasonable to allege that such "bending" results in "movement as a whole straight upward or downward, parallel to such an axis," when, for example, a load is centered on the surface of the Wii Balance Board causing all four load cells to "bend" under the same load.  This is likewise consistent with Ithaca's pre-filing investigation that determined the "move parallel" limitation was met.  (*See* Section V.C.1.)

### E.      Nintendo's Rule 11 motion is an attempt to insinuate its improper constructions into this case

Nintendo now attempts to backpedal from its earlier constructions, and argues that movement must be "perceptible to the user."  There is no support in any evidence for Nintendo's

latest constructions.  Since Nintendo's Rule 11 motion is premised on the Court accepting these

constructions as "fact," and there is no basis to accept these constructions at all, the Motion

should be denied.

> **1.      There is no basis to limit "tilt" to a slope that is "perceptible to the user"**

Nintendo now argues that "tilt" requires that "the slope has to at least be <u>perceptible to</u>

<u>the user</u>."  (Motion at 6.)  Nintendo's new construction lacks any support in the claims,

specification, file history, its dictionary definitions, or any other evidence.  Neither the claims

nor specification make any mention of tilt being "perceptible to the user."  To the contrary, the

claims recite that a "sensor device" (not the user) detects the direction and magnitude of the

body's center of gravity.  Nintendo offers no evidence that the claimed sensor device can only

detect movement that is "perceptible to the user," and indeed argues the opposite: that its own

sensor devices can detect bending that may not be perceptible to the user.  (*See* Horwitz Decl.,

Ex. 10 at 5.)  Nintendo's construction is therefore contrary to the plain language of the claims

and cannot be correct.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005).

Moreover, the specification describes the *opposite* aim of preventing movement from

taking place too quickly, and thereby "preferably mak[ing] it <u>imperceptible</u>, or almost so, to the

user."  ('802 Patent at 4:26-30 (emphasis added).)  Making tilt *imperceptible* to the user is

consistent with teachings in the specification that the tilt should be *limited* to make it easier for

the user to keep his balance.  For example, the specification teaches limiting the maximum angle

of the support plate to a "relatively small value, for example 10° to 15°"[6] and using a "restoring

---

[6] The 10-15 degree tilt is merely an "example" of a "maximum" angle of tilt, described in the overall context of limiting the maximum angle of tilt.  ('802 Patent at 4:3-8.)  Thus, the described embodiment encompasses degrees of tilt *smaller* than the 10-15 degree "maximum," including degrees of tilt that may not be perceptible to the user.

device that opposes tilting of the support surface." (*Id*. at 4:3-8.)  The restoring device limits tilt

using a compressible medium such as a pressure hose, which provides a restoring force that can

be increased by raising the gas pressure in the hose.  (*Id*. at 4:8-12, 61-64.)  By increasing the gas

pressure, the restoring force is increased, and the angle of tilt is limited.  Additionally, the

specification teaches using a stop element that operates to "prevent excessive tilting of the entire

support unit."  (*Id*. at 12:54-56; Fig. 5 (elements 194, 189, and 199).)  These structures limit the

angle of tilt, making it less perceptible.

   Nintendo's arguments that the specification requires "actual and perceptible movement"

are unavailing.  Nintendo argues that the inventors focused on "providing a moving surface" to

enhance the feeling of simulating actual sports.  (Motion at 6, *citing* 2:53-54 and 3:1-6.)

However, the specification merely describes providing a "virtual reality" in which the user's

"virtual body" jumps over "virtual" obstacles, and distinguishes the "virtual body" from the "real

body of the user."  ('802 Patent at 6:40-46.)  This shows that the invention does *not* require

"perceptible" movement, but is focused instead on "virtual" movement, i.e. movement in a

"virtual space (cyberspace)."  (*See Id*. at 1:50.)  Likewise, Nintendo's discussion of the safety

handle and the inclined position (Motion at 7) is off-base, since the "incline" is caused by the

standing foot (Fig. 1, element 14), not tilting of the standing plate.  (*See* '802 Patent at 10:14-19.)

Additionally, in the embodiment of a standing plate "provided with a plurality of pressure

sensors" (Motion at 5, 8; '802 Patent at 10:30-35), the pressure sensors are "provided with" (e.g.

on top of) the standing plate, which does not tilt, as opposed to a "support unit mounted in a

tiltable manner" as recited in the claims.  Moreover, under the doctrine of claim differentiation,

the inventors did not disclaim use of pressure sensors generally; the independent claims broadly

recite a "sensor device," which would include a pressure sensor, whereas dependent claim 24

limits the sensor to an "optoelectronic sensor device."[7]

Nintendo's new construction for "tilt" also lacks any support in the prosecution history.

The applicant never argued during prosecution that "tilt" must be "perceptible to the user."

Desperate for support, but having none, Nintendo resorts to arguing that the device described in

the prior art McShane Patent allows for "actual and perceptible 'tilt'…."  (Motion at 8.)

However, even if that were true, it would in no way narrow the *claims* to that prior art device.

*See Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1375 (Fed. Cir. 2008) (no

prosecution disclaimer where the applicant simply describes features of the prior art and does not

distinguish the claimed invention based on those features).  If anything, the applicant's argument

that the platform described in the McShane Patent is "merely angularly displaceably (i.e. tiltably)

mounted" shows that "tilt" should have a *broader* construction, as Nintendo itself previously

argued.  (*See* Section V.D.)

Nintendo's only other argument based on the prosecution history is a statement that the

platform in the Ward Patent is "merely horizontally moveable, not tiltable…."  Motion at 9.

According to Nintendo, this statement is only true if "microscopic bending of Ward's metal

supports does not satisfy the 'tilt' limitation."  *Id*.  However, there is no disclosure anywhere in

the Ward Patent of any supposed bending of the metal supports, and this is actually contrary to

---

[7] Nintendo also cites Fig. 3 showing use of a "ball-and-socket joint" and "pivot pin" in the mounting arrangement to argue that the claim should be limited to "perceptible movement." Motion at 6-7.  However, it is axiomatic that the claims are not limited to embodiments disclosed in the specification and figures.  *Philips*, 415 F.3d at 1323.  Moreover, since the ball joint is disclosed in certain dependent and independent claims (e.g., claims 3, 4, 7, 40, 51 52, 56, 57, 58, 70, and 72), under the doctrine of claim differentiation, other claims are presumed not to include this element.  *See Philips*, 415 F.3d at 1314-15 ("the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim.").

its teachings.  Unlike the Wii Balance Board, which uses load cells specifically designed to bend under the weight of a user standing on the device, the Ward Patent describes a foot-operated input device with a top plate that "can move freely in the X-Y plane," but not in the vertical (Z) plane.  The top plate is supported by upright supports (shown under caster bearings in Fig. 5), but does not support the user's body weight, bend, tilt or move vertically at all.[8]  (*See* Ward Patent at 4:27-29.)  Thus, Nintendo's argument that this discloses any bending is factually wrong, and is simply a red herring.

### 2.     There is no basis to limit "move parallel" to require "perceptible movement" of the support surface

As with its construction of "tilt," Nintendo argues that "move parallel" requires "<u>perceptible</u> (or 'significant') movement" of the support surface.  (Motion at 11 (emphasis added).)  This new construction is also inconsistent with the evidence, including the claims, specification, and file history.

As discussed above, the claims require movement to be detected by a "sensor device," not a user, and Nintendo's construction is therefore contrary to the plain claim language and cannot be correct.  As further discussed above, the specification describes the *opposite* aim of preventing movement from taking place too quickly, and thereby preferably making it "imperceptible" to the user.  In its discussion of "move parallel," Nintendo even admits that the specification emphasizes the need to "control or limit" the extent of vertical movement, which is achieved by using a "vertical restoring device," "a vertical detent device," and "a vertical movement limiting device."  (Motion at 10; '802 Patent at 4:40, 5:16, and 5:36-37.)  The vertical

_____

[8] There is no disclosure in the Ward Patent of the user standing on the device or otherwise causing the top plate to bend; rather, the device is an alternative to operating a mouse, trackball, or joystick with the user's foot while simultaneously typing on a keyboard.  (*See* Ward Patent at 1:9-41.)

restoring device, for example, may be a compressible medium such as a compressed air-hose, which provides a restoring force that can be increased by raising the pressure in the hose. (*Id*. at 4:45-47, 61-64.) By increasing the gas pressure in the hose, the restoring force is increased, and parallel movement is limited.[9] The vertical restoring and other devices are intended to limit any vertical movement, which is consistent with the goal of making it preferably "imperceptible" to the user. ('802 Patent at 4:26-30.)

Nor is there any support in the prosecution history for reading "perceptible movement" into the "move parallel" limitation. Nintendo misinterprets and takes entirely out of context a statement explaining that there was no disclosure in the prior art that rubber bushings would allow for any "significant downward movement of the platform." (Horwitz Decl., Ex. 16 at 6.) Here, the applicant was merely explaining why there was no disclosure in the Lipps Patent of parallel movement:

> Applicants note that there is no disclosure in LIPPS suggesting that the bushing 72 (see Figs. 3 and 4) would allow for any significant downward movement of the platform 26, much less a downward movement which is parallel to axis C. On the other hand, Appellants do not disagree that the spring 62 allows the platform 26 to move downwards. The question is, however, does the platform 26, which is mounted on one of its ends 52 to a bushing 72 and on another of its ends 50 to a spring 62, have the ability to move upwards and/or downwards parallel to axis C? Appellants assert that the answer is no, and that at the very least, this document does not disclose such movement.

(*Id*. at 7 (emphasis in original).)

As the applicant explained and even emphasized, "[t]he question" being addressed is whether the platform has the ability to "move upwards and/or downwards parallel to axis C?" (*Id*. (emphasis in original).) In this context, the applicant emphasized that any movement at the

---

[9] Nintendo also repeats its argument that the specification describes pressure sensors as an alternative embodiment. This argument fails, as discussed above in Section V.E.1.

end 52, which is supported by rubber bushings, cannot be "significant" since the opposite end 60

is supported by a spring.  (*Id*.)  Driving the point home, the applicant explained that "the

bushings 72 and the spring 62 have different load carrying abilities" and therefore "would deflect

and/or compress differently under the same load," causing "uneven movement" that "could not

be characterized as parallel."  (*Id*.)  Since one end is supported by rubber bushing and the other

side by a spring, there is no <u>parallel</u> movement.[10]  This is nowhere close to Nintendo's argument

that "significant" movement means "perceptible movement."  There is no discussion anywhere

in the prosecution history of "perceptible movement"; Nintendo is merely grasping at straws.

## VI.    CONCLUSION

For the reasons forth above, Nintendo's Rule 11 motion must be denied.  Pursuant to

Rule 11(c)(2), Ithaca requests its reasonable expenses, including attorneys' fees and costs,

incurred for defending this baseless Motion.

---

[10] Unlike the Lipps Patent, which describes using springs and rubber having significantly different load carrying abilities, Nintendo's own declarant states that the Wii Balance Board uses the bendable load cells on all four corners, and thus vertical movement is parallel.  (*See* Horwitz Decl., Ex. 10 at 5.)

Dated: October 7, 2013                    ___/s/ Kenneth L. Dorsney_____
                                          Kenneth L. Dorsney (#3726)
                                          MORRIS JAMES LLP
                                          500 Delaware Avenue, Suite 1500
                                          Wilmington, DE 19801-1464
                                          (302) 888-6800
                                          kdorsney@morrisjames.com

                                          *Pro Hac Vice:*

                                          Randall J. Sunshine
                                          Ted S. Ward
                                          Kim Zeldin
                                          Edward A. Klein
                                          LINER GRODE STEIN YANKELEVITZ
                                          SUNSHINE REGENSTREIF & TAYLOR
                                          1100 Glendon Avenue, 14th Floor
                                          Los Angeles, CA 90024-3503
                                          (310) 500-3500
                                          rsunshine@linerlaw.com
                                          tward@linerlaw.com
                                          kzeldin@linerlaw.com
                                          eklein@linerlaw.com

                                          *Attorneys for Plaintiffs Ithaca Ventures k.s. and
                                          Ithaca Development, LLC*